IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI, OHIO


| | | |
|---|---|---|
| JOSEPH GALLOWAY<br>59 Township Road 1079<br>Chesapeake, Ohio 45619 | )<br>)<br>) | Case No. 1:11 cv 850 |
| and | )<br>) | JUDGE TIMOTHY S. BLACK |
| BETH AND JAMES GALLOWAY<br>59 Township Road 1079<br>Chesapeake, Ohio 45619 | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>)<br>) | PLAINTIFFS' CORRECTED<br>AMENDED COMPLAINT WITH<br>JURY DEMAND |
| -vs- | )<br>) | |
| CHESAPEAKE UNION EXEMPTED<br>VILLAGE SCHOOLS BOARD OF<br>EDUCATION<br>10183 County Road One<br>Chesapeake, Ohio 45619 | )<br>)<br>)<br>) | |
| and | ) | |
| SCOTT HOWARD<br>10183 County Road One<br>Chesapeake, Ohio 45619 | )<br>)<br>) | |
| and | ) | |
| SAM HALL<br>10183 County Road One<br>Chesapeake, Ohio 45619 | )<br>)<br>) | |
| and | ) | |

1

```
JEANNIE HARMON                        )
10183 County Road One
Chesapeake, Ohio  45619               )

and                                   )

LAWRENCE COUNTY JOINT                 )
VOCATIONAL SCHOOL DIST.
BD. OF ED.                            )
11627 State Route 243
Chesapeake, OH  45619                 )

and                                   )

STEVE DODGION                         )
11627 State Route 243
Chesapeake, OH  45619                 )

                                      )
and
                                      )
JOSEPH RASE
10183 County Road One                 )
Chesapeake, Ohio  45619
                                      )
and
                                      )
KIM WILLIAMS
10183 County Road One                 )
Chesapeake, Ohio 45619
                                      )
and
                                      )
SUSAN ARTHUR
11627 State Route 243                 )
Chesapeake, OH  45619
                                      )
and
                                      )
JOHN DOES 1-10
Addresses Unknown                     )

                                      )
     Defendants.
                                      )
```

INTRODUCTION

1.   This is a complaint brought by private citizens against public entities and several of their officials and employees for redress of violations of plaintiffs' civil rights.  The complaint seeks declaratory and monetary relief.  This Amended Complaint is being filed with leave of Court.

JURISDICTION AND VENUE

2.   Jurisdiction is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 in that it arises under Section 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. Section 794 ("504").  Claims are asserted pursuant to the Fourteenth Amendments to the U.S. Constitution, 20 U.S.C. Section 1681, 42 U.S.C.-12101-12213, and 42 U.S.C. Section 1983 and 1988.  To the extent declaratory relief is sought, claims are asserted pursuant to 28 U.S.C. Sections 2201 and 2202.  Supplemental state claims are asserted pursuant to 28 U.S.C. Section 1367, state statutes and state common law.  Venue is proper pursuant to 20 U.S.C. Section 1391(b) because the defendants are located within the jurisdiction of the Southern District of Ohio.

PARTIES

3.  Plaintiff JOSEPH GALLOWAY is an adult who turned 18 years old on September 25, 2011 and who was at all relevant times a minor male child and who at all relevant times was a resident of Chesapeake, Ohio in Lawrence County, Ohio within the Southern

3

District of Ohio, and at all relevant times plaintiff attended the Chesapeake Union Exempted Village Schools, which are operated by defendant Chesapeake Union Exempted Village Schools Board of Education, and the Collins Career Center, which is operated by the Lawrence County Joint Vocational School District Board of Education.

4. Plaintiffs BETH AND JAMES GALLOWAY are adults who at all times relevant hereto were residents of Chesapeake, Ohio in Lawrence County, Ohio within the Southern District of Ohio. Plaintiffs Beth and James Galloway are the natural parents of plaintiff Joseph Galloway.

5. Defendant Chesapeake Union Exempted Village Schools Board of Education is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the Chesapeake Union Exempted Village Schools, and by information and belief, operated an education program or activity which received federal financial assistance within the meaning of 20 U.S.C. Section 1687.

6. Defendant Scott Howard was at some relevant times the Superintendent of the Chesapeake Union Exempted Village Schools; in that capacity, acting under color of law, he is responsible for the implementation of all official governmental laws, policies, regulations and procedures governing the Chesapeake Union Exempted Village Schools. He is sued in his official and individual capacities.

7.    Defendant Sam Hall was at some relevant times the Superintendent of the Chesapeake Union Exempted Village Schools; in that capacity, acting under color of law, he was responsible for the implementation of all official governmental laws, policies, regulations and procedures governing the Chesapeake Union Exempted Village Schools.   He is sued in his official and individual capacities.

8.  Defendant Jeannie Harmon was at all relevant times a-full-time employee of the Chesapeake Union Exempted Village Schools, serving in the capacity as a classroom teacher.  She is sued in her official and individual capacities.

9.  Defendant Lawrence County Joint Vocational School District Board of Education is, by information and belief, a public entity which, acting under color of law, is responsible for the formulation and implementation of all official government laws, policies and procedures in effect for the Lawrence County Joint Vocational School District and by information and belief operates an educational program or activity, known as the Collins Career Center, which receives federal financial assistance within the meaning of 20 U.S.C. Section 1687. Collins Career Center ("CCC") is located in Chesapeake High School and students enrolled in CCC, like Joseph Galloway, attended CCC classes during their school day at Chesapeake High School.  The CCC program was coordinated by officials and teachers in conjunction with the Chesapeake High School program,, although it is a separate entity.

10.  Defendant Steve Dodgion is, by information and belief, a

5

full-time employee of the Lawrence County Joint Vocations District, serving in the capacity of superintendent.  In that capacity, he is responsible for the implementation of all official government laws, regulations, policies and procedures governing the Lawrence County Joint Vocational School District, including CCC.  He is sued in his individual as well as his official capacity.

11.  Defendant Joseph Rase was at all relevant times a full-time employee of the Chesapeake Union Exempted Village Schools, serving as the Principal of Chesapeake High School; in that capacity, acting under color of law, he is responsible for the implementation of all official governmental laws, policies, regulations and procedures governing Chesapeake High School.  He is sued in his official and individual capacities.

12.  Defendants Kim Williams and Susan Arthur were at all relevant times employees of the Lawrence County Joint Vocational School District; serving as classroom teachers at the Collins Career Center.  They are sued in their individual and official capacities.

13.  Defendants JOHN DOE 1-10, whose identities are currently unknown to plaintiffs, are believed to at all relevant times have been full-time employees of the Chesapeake Union Exempted Village Schools; in that capacity, acting under color of law, they are responsible for the implementation of all official governmental laws, policies, regulations and procedures governing the provision of special education to students under their jurisdiction.  They are sued in their official and individual capacities.

FACTS

14.  Plaintiff Joseph Galloway was at all relevant times a student residing in Chesapeake, Ohio with his mother and father, Beth and James Galloway and attending the Chesapeake Union Exempted Village Schools (hereafter "Chesapeake Schools"). Joseph turned 18 years of age on September 25, 2011.

15.  Joseph has been diagnosed with Asperger's Disorder, ADHD, seizure disorder and specific learning disability. Joseph has been identified as a student with a disability pursuant to the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. Section 1400 et seq., the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973.

16.  Joseph was identified as a student with a disability in 2005 under the category of Other Health Impaired, which was changed to Autism in a 2007 evaluation.

17.  Joseph entered the Chesapeake schools in sixth grade in the fall of 2005.

18.  Joseph has been the victim of disability-based discrimination, harassment and bullying by both teachers and students in the Chesapeake school system since 2005.

19.  Some examples of the discrimination, harassment and bullying to which he has been subjected are the following:

a)  In sixth grade, his teacher Mrs. Jeannie Harmon asked him, in front of the entire class, if he really had seizures and questioned what the seizures looked like because "I have never seen you have a seizure." Joseph was so embarrassed he came home crying

that day;

b) In sixth grade, during a parent-teacher conference, Mrs. Harmon told Mr. and Mrs. Galloway that it was "nuisance to teach Joseph," that he was "lazy," not disabled, and that his parents were "enabling" him to feel like a victim;

c) Throughout his sixth grade year, Mrs. Harmon continued to quiz Joseph in front the entire class about the validity of his seizure disorder;

d) During a seizure, Joseph often became incontinent, and toward the end of his sixth grade year he had a seizure in Mrs. Harmon's class; other children in his class mimicked him by throwing water on their pants and shaking themselves violently, and calling Joseph "seizure boy," all with the knowledge and approval of Mrs. Harmon.

20. The Galloways moved Joseph out of the Chesapeake schools for his seventh grade year because of the constant harassment he received in school; Joseph attended a private parochial school.

21. The Galloways moved Joseph back to Chesapeake Schools for his eighth grade year in the fall of 2007; that same year he enrolled in an engineering program called "Project Lead-the-Way, which was a program of the Collins Career Center, which was in turn administered by the Lawrence County JVS. Project Lead-the-Way met in an engineering lab built at Chesapeake High School. During Joseph's eighth grade year, he would walk from Chesapeake Junior High School to Chesapeake High School for the last period of the day to participate in Project Lead-the-Way.

22. Once he started at Chesapeake High School in ninth grade (2008-2009), he still participated in Project Lead-the-Way, but he only had to walk from one part of the high school to the lab in the high school where Project Lead-the-Way was located.

23. Throughout his high school years, between 2008-2011, the bullying and harassment continued on an almost daily basis, both while Joseph was attending classes at Chesapeake High School and while he was attending class at CCC, and during breaks between classes of both schools, with the following examples:

a) Joseph had built several scale model churches and other buildings for a school class project in Project Lead-the-Way during eighth grade, and another student stole one of his structures and then smashed it against a wall;

b) Joseph joined the Chesapeake Junior High School wrestling team and after one wrestling match, on the bus on the way home, several students pulled out their penises, telling him to "touch my dick, you know you want to;"

c) As part of almost daily bullying at both Chesapeake and CCC, students would move Joseph's belongings, hide his belongings, shove him and threaten to break his computer; these events occurred in the school cafeteria and became so severe that Joseph eventually stopped eating lunch;

d) Students repeatedly stole his backpack, in which he carried his MacBook computer, played catch with his backpack and eventually smashed the screen on his computer; these incidents occurred in the cafeteria and in the CCC lab area, mostly during

9

Joseph's ninth grade year.

e)   After gym class, on several occasions during Joseph's tenth grade year, when Joseph was seated on a bench in the locker room, another student would come up behind him and grind his penis into Joseph's back;

f)   During wrestling practice at Chesapeake High School, on several occasions in the locker room and in the school hallways, other students would come up behind Joseph and pull his pants down;

g)   During tenth grade, a Chesapeake High School English teacher asked Joseph, in front of the entire class, if he had taken his medicine that day because he was "acting crazy;"

h)  During a Project Lead-the-Way class, a student pulled a chair from behind Joseph, causing him to fall to the ground, hurting his back and requiring treatment;

i)  During a Project Lead-the-Way class in Joseph's tenth grade year, two other students told Joseph they wanted him to "hang himself, let us watch, we will tighten the noose, dig your grave, cut the rope after you're dead and cover you up with dirt." Joseph asked the teacher, Mrs. Williams, if he could be taken out of the group in which he was placed and the teacher refused, so Joseph went to the Chesapeake High School assistant principal, who told him he needed to learn to "work it out;"

j)   One student came up behind Joseph in the Chesapeake High School cafeteria and punched him in the back, causing a huge bruise to form on Joseph's back, requiring treatment;

k)   During his junior year in high school, Joseph's Project

10

Lead-the-Way teacher was defendant Arthur; during that year, Joseph was the victim of almost daily name-calling, teasing and abuse because of his disability. Some of the class work was done in groups; Ms. Arthur would assign Joseph to a group of students who regularly bullied him and those students would freeze him out of assignments or intentionally hide the supplies he needed to complete his part of the project. When he complained to Ms. Arthur about it, she would ignore him, goad him into losing his temper, and discipline him in a disproportionate way compared with students without disabilities.

24. The bullying and harassment of Joseph in his Project Lead-the-Way class became so severe and pervasive that Joseph's parents asked officials from both Chesapeake and Lawrence County JVS to move Joseph away from Ms. Arthur.

25. These incidents, and others like them, occurred on a regular basis, and while Joseph was within the jurisdiction of both Chesapeake and Lawrence County; although the Chesapeake school system was a separate entity from the Lawrence County JVS program, teachers and administrators of both entities shared information about Joseph, both in terms of his academic progress, his disability-based programming and the harassment and bullying he was experiencing.

26. After each incident, Mr. or Mrs. Galloway informed school officials, from Chesapeake and/or Lawrence County, about what had happened and asked for help; at each step, the school officials did nothing to stop the constant bullying. Among the school officials

Mr. and Mrs. Galloway complained to about the bullying and harassment, were Chris Smith, vice principal of Chesapeake High School; Julie Mayo, Director of Special Education for the Chesapeake School System; Kim Wells, principal of Chesapeake Middle School and eventually curriculum director for the Chesapeake School System; Jeff Williams, supervisor of the Project Lead-the-Way program and Mrs. Williams' husband; Greg Michaels, intervention specialist at Chesapeake High School; defendants Howard, Dodgion, Rase, Hall, Williams and Arthur; and all of Joseph's classroom teachers over the years, numbering approximately 15.

27. In January, 2010, the Galloways met with Marc Ellison, director of the West Virginia Autism Training Center at Marshall University; Mr. Ellison agreed to meet with school officials to educate them about Autism Spectrum Disorders.

28. On February 25, 2010, Mr. and Mrs. Galloway met with Joseph Rase, principal of Chesapeake High School, to discuss their concerns about the faculty's lack of knowledge of autism and the school's obligations under federal and state laws.

29. During that meeting, Mr. Rase said that Joseph was starting to act out in class and he showed them a document which he said was a petition signed by several students in Joseph's CCC classes saying they wanted Joseph "out of there." Mr. Rase indicated that the teacher of the class, Kim Williams, a Lawrence County employee, had also signed the document.

30. In October, 2010, Mr. and Mrs. Galloway met with several Chesapeake officials, including defendant Howard, the

superintendent. At that meeting, Debbie Riggs, the head of the Chesapeake teachers' union, stated that she would not report a teacher who harassed a disabled student.

31. On numerous other occasions, the Galloways met with or communicated with officials of both Lawrence County JVS and Chesapeake, including defendants Howard, Dodgion, Hall and Rase, to report bullying and harassment incidents that had occurred both at Lawrence County JVS and Chesapeake, both in class and outside of class, including the incidents enumerated above.

32. In each case, the defendants failed to take appropriate action to curtail the bullying and harassment, including when teachers encouraged the behavior.

33. By information and belief, both the Chesapeake School System and Lawrence County JVS have policies designed to prevent and curtail bullying; in the case of Joseph Galloway, the two school district entities failed to properly administer those policies.

34. In addition, ever since the Columbine High School massacre in April, 1999, in which Eric Harris and Dylan Klebold, both students with emotional disturbances who had been victims of bullying, embarked on a horrible shooting spree, killing 12 students and one teacher, injuring 21 students and then killing themselves, schools across the country have been alerted to the dangers of ignoring bullying.

35. Even before Columbine, the U.S. Department of Education produced a document called "Protecting Students from Harassment and

Hate Crime," which provided for schools a checklist of items that if followed, would help to develop a culture that makes schools safer for all students and helps prevent bullying and harassment. These items included mandates that school boards, superintendents and administrators should:

a. recognize the urgency of the problem of bullying and identify people/agencies that can help develop effective prevention and response strategies;

b. compile a library of useful materials;

c. work on creating an effective anti-harassment program in consultation with parents, students, and community groups;

d. appoint a Compliance Coordinator to train school personnel;

e. assess the school climate to determine the prevalence of harassment that exists and the potential for hate-motivated violence;

f. adopt a written anti-harassment policy and assure the policy is clearly communicated to all members of the school community; and school personnel and students are held accountable for their actions;

g. develop a formal grievance procedure and take steps to make sure it is working properly;

h. have instructional personnel use or supplement a district's curriculum and pedagogical strategies to foster respect and appreciation for diversity;

i. institute, improve or expand age appropriate student

14

activities to prevent or reduce prejudice and conflict;

j. institute specific measures to respond immediately and effectively when harassment occurs to stop the harassment and prevent recurrence;

k. flexibly apply response mechanisms to both the victim and the perpetrator, taking into account the parties' ages and the context of the behavior;

l. continually monitor the school climate and promptly address problems that could lead to harassment or violence or that indicate that harassment could be occurring;

m. appoint appropriate school officials to become familiar with pertinent civil and criminal laws at the state, local and federal levels, so that they are able to recognize possible civil rights violations, hate crimes and other criminal acts;

n. develop guidelines and procedures for collaboration with law enforcement officials, make appropriate referrals to outside agencies and designate liaison personnel;

o. assure crisis intervention plans are in place to minimize the possibility of violence or disruption of the educational process;

p. have district-level personnel and individual school sites form continuing partnerships with parents and the community to prevent hate crimes and harassing behaviors;

q. provide staff training and professional development programs to support the district's anti-harassment efforts;

r. assure that all harassment incidents are carefully

documented and incidents are reported to outside authorities as required; and

s. regularly assess the effectiveness of the anti-harassment efforts.

36. Over time, the Office of Civil Rights of the U.S. Department of Education issued numerous opinions on the issues of bullying and harassment, further giving school districts direction as to how to deal with this ongoing threat to the safety of children and to assure that all children received an appropriate education that was not derived from a hostile environment. The OCR noted that a failure to do any of the following various items could create a hostile educational environment for a student:

a. provide school assemblies and instruction on bullying;

b. address bullying in classroom intervention settings;

c. conduct a school bullying assessment;

d. form a bullying prevention coordination team at school;

e. include language specifically identifying bullying in the school rules;

f. develop strategies to prevent bullying in hot spots;

g. post signs in classrooms prohibiting bullying and listing the consequences; and

h. encourage students to help classmates who are being bullied and to report bullying.

37. In regard to handling an incident once reported, the OCR noted that a school district should:

a. train staff on how to investigate a claim of bullying and harassment;

b. fully investigate allegations of bullying and harassment;

c. respond to each allegation promptly;

d. interview the student and the perpetrator;

e. keep a written record of the investigation;

f. take prompt action against the perpetrators;

g. remove the perpetrator from the class;

h. take action to prevent future incidents;

i. offer to transfer the student to a different class;

j. offer counseling to the student victim;

k. offer counseling to the perpetrator;

l. notify parents of their rights to file grievances;

m. offer the student a 1:1 aide of "shadow" for protection;

n. offer social skills training for the student;

o. offer social skills training for the perpetrator;

p. offer social skills training to the student's class;

q. convene a meeting of the parents and educators to discuss the issues of bullying and harassment;

r. use a program to monitor and oversee the resolution of incidents;

s. hire a temporary paraprofessional to monitor the perpetrator after the incident;

t. perform a psychological evaluation of the student victim after the incident; and

u. use any incident of bullying as a "teaching moment" for

17

the perpetrator and the entire student body.

38. Despite the fact that this information has been available to school districts for more than a decade, by information and belief, the Chesapeake school district and the Lawrence County JVS have taken few, if any of these steps to prevent and deal with bullying.

39. Defendants Howard and Dodgion had policy-making authority for their respective entities.

40. Defendants Lawrence County, Chesapeake, Howard, Hall and Rase are jointly and severally liable for the incidents that occurred within the jurisdiction of both Lawrence County and Chesapeake, because the incidents of bullying and harassment occurred in the Chesapeake school building, but within the jurisdiction of both the Chesapeake School District and the Lawrence County JVS program known as Project Lead-the-Way, administered by the Collins Career Center. Administrators of Chesapeake, including defendants Howard, Hall and Rase, knew or should have known about incidents occurring at both Chesapeake and CCC, and administrators of CCC, including defendant Dodgion, knew or should have known about incidents occurring both at Chesapeake and CCC; by their knowledge of, and refusal to take action to curtail the constant bullying and harassment of Joseph Galloway, these administrators implicitly authorized, approved or knowingly acquiesced in the conduct of the other defendants, constituting a deliberate indifference to Joseph Galloway's rights.

41. The defendants' prior knowledge of Joseph's disabilities

and the ongoing knowledge of the bullying and harassment he received in both the Chesapeake school system and CCC as a result of those disabilities and the failure to implement any procedures to prevent, diminish or stop such bullying and harassment; the defendants' actual harassment and bullying of Joseph and the administrators' encouragement of said bullying and harassment by both staff and students; the defendants' failure to properly train their staffs and failure to properly equip their staffs with the tools and skills necessary to successfully teach a child with autism and other disabilities; the complete failure of oversight by Chesapeake and Lawrence County administrators; the defendants' ongoing failure to properly educate Joseph according to his needs; these acts and omissions and others created a hostile educational environment and constitute deliberate indifference to Joseph's and Mr. and Mrs. Galloway's constitutional, statutory and common-law rights in violation of Joseph's and Mr. and Mrs. Galloway's rights and also constitute intentional discrimination against Joseph on the basis of his disability.

42. The defendants' actions and omissions, cited above, effectively deprived Joseph of access to his own school district's educational resources and opportunities due to his disability and were clearly unreasonable in light of the known circumstances.

43. The actions and omissions of the defendants were similar in nature, repeatedly continued over time, and caused extreme physical and emotional pain and suffering to Joseph and emotional distress to Mr. and Mrs. Galloway, and the effects of those

violations are still being felt today.

44.  Due to the actions and omissions of the defendants, jointly and severally, Joseph has been deprived of equal access to educational opportunities due to his disabilities, in violation of the U.S. Constitution and federal and state statutory law.

45.  The failure by defendants Chesapeake and Lawrence County to adequately train their staffs and to properly oversee and supervise their employees in the education of Joseph, are part of a policy and practice of the Chesapeake school district and the Lawrence County JVS of violating students' rights by failing to adequately train their staffs and teachers and failing to adequately teach special education students; the actions of defendants increased the risk of harm to Joseph and the defendants knew or should have known that their actions would substantially increase the risk of both physical and emotional harm to Joseph.

46.  As a direct result of the actions and omissions of the defendants, jointly and severally, plaintiff Joseph Galloway has suffered and continues to suffer loss of educational opportunities, loss of basic constitutional rights, monetary damages and severe physical and emotional distress.  Mr. and Mrs. Galloway have suffered loss of their constitutional rights, monetary damages and extreme emotional distress.

47.  In June, 2011, plaintiffs filed what is known as a "due process complaint" against the Chesapeake school district; due process is the name of the mandatory administrative proceeding established by the IDEA and state law, through which a parent

lodges a complaint against a school district for alleged violations of IDEA. A due process complaint is a mandatory prerequisite to filing a lawsuit under the IDEA.

48. In August, 2011, plaintiffs and Chesapeake resolved the educational portion of plaintiffs' due process complaint; the parties specifically left open the option for plaintiffs to file a lawsuit against Chesapeake and any employees of the school district, pursuant to 42 U.S.C. Section 1983, for any claims not specifically covered by the settlement agreement, including but not limited to monetary damages.

49. Plaintiffs have exhausted all administrative remedies and/or are not required to exhaust all administrative remedies.

## COUNT I

50. Plaintiffs reassert the foregoing as if fully rewritten herein.

51. The actions of all defendants constitute a violation of plaintiffs' constitutional right, pursuant to the substantive due process clause of the Fourteenth Amendment, in that the defendants' conduct, as described above, was arbitrary and egregious, was intended to injure plaintiff in a way that was unjustifiable by any governmental interest and is the sort of governmental action that shocks the conscience.

52. As a direct result of the actions and conduct of defendants, plaintiffs suffered and continue to suffer extreme emotional pain and suffering and Mr. and Mrs. Galloway have

suffered the loss of companionship with their son.

## COUNT II

53.  Plaintiffs reassert the foregoing as if fully rewritten herein.

54.  The actions of all defendants, cited above, constitute violations of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution in that plaintiff Joseph Galloway was treated differently than similarly-situated non-disabled students in the regular education setting because non-disabled students were not regularly subjected to disability-based bullying, damage to property, sexual assault and verbal and physical harassment. The actions of defendants in allowing and acquiescing and failing to curtail and prevent such behavior is not rationally related to a legitimate governmental purpose.

55.  As a direct result of the actions and conduct of defendants, plaintiff Joseph Galloway suffered and continues to suffer loss of fundamental constitutional rights, extreme emotional pain and suffering and loss of educational opportunities and Mr. and Mrs. Galloway have suffered the loss of companionship with their son.

## COUNT III

56.  Plaintiffs reassert the foregoing as if fully rewritten herein.

57.  The actions of defendants Chesapeake and Lawrence County,

22

cited above, constitute violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794 and the Americans with Disabilities Act, 42 U.S.C. Section 12101-12213.

58.   As a direct result of the actions and conduct of defendants, plaintiff Joseph Galloway has suffered and continues to suffer loss of fundamental statutory rights, extreme emotional pain and suffering and loss of educational and developmental opportunities.

## COUNT IV

59.   Plaintiffs reasserts the foregoing as if fully rewritten herein.

60.   The actions of defendants Chesapeake and Lawrence County, in permitting and failing to curtail or prevent sexual assaults against plaintiff Joseph Galloway based on a perception about his sexual orientation and allowing plaintiff to be harassed by other students based on his gender and by allowing a hostile school environment based on gender and perceived sexual orientation constitutes a violation of Title IX, 20 U.S.C. Section 1681.

61.   As a direct result of the actions and conduct of defendants Chesapeake and Lawrence County, plaintiff Joseph Galloway has suffered and continues to suffer extreme emotional distress and loss of educational opportunities.

## COUNT V

62.   Plaintiffs reassert the foregoing as if fully rewritten

herein.

63. The actions and omissions of defendants Chesapeake and Lawrence County, in failing to properly train their officials and teachers in proper methods of educating children with disabilities, and in operating schools in which a student such as Joseph was regularly and on an ongoing basis mistreated, and in failing to properly oversee and supervise the education of Joseph, constitute violations of the obligations of defendants Chesapeake and Lawrence County to maintain lawful policies and procedures pursuant to <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978).

64. As a direct result of the actions and conduct of defendants, plaintiff Joseph Galloway has suffered and continues to suffer extreme emotional distress, loss of companionship, and in Joseph's case, loss of educational opportunities.


<u>COUNT VI</u>

65. Plaintiffs reassert the foregoing as if fully rewritten herein.

66. The actions of all defendants, as enumerated above, constitute negligence and/or gross negligence under state law.

67. As a direct result of the actions and conduct of defendants, plaintiff Joseph Galloway has suffered and continues to suffer extreme emotional distress, loss of companionship and loss of educational and developmental opportunities.

WHEREFORE, plaintiffs ask that this court grant the following relief:

A)  Declare that the acts and conduct of all defendants constitute violations of plaintiffs' constitutional, statutory and common-law rights.

B) Enjoin defendants from violating the constitutional and statutory rights of its citizens.

C) Grant to the plaintiffs and against all defendants, jointly and severally, an appropriate amount of compensatory damages, and against the individual defendants an appropriate amount of punitive damages.

D) Grant to the plaintiffs and against all defendants, jointly and severally, appropriate costs and attorneys' fees.

E)  Grant to the plaintiffs whatever other relief the court deems appropriate.


/s/Kenneth D. Myers
KENNETH D. MYERS (005365)
6100 Oak Tree Blvd., Suite 200
Cleveland, OH  44131
(216) 241-3900
Counsel for Plaintiffs


<u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury.


/s/Kenneth D. Myers
KENNETH D. MYERS

Counsel for Plaintiffs


25