IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH GALLOWAY, et al., | ) | Case No.  1:11 CV 850 |
| Plaintiff, | ) | |
| | ) | JUDGE TIMOTHY S. BLACK |
| -vs- | ) | |
| | ) | PLAINTIFFS' RESPONSE TO |
| CHESAPEAKE UNION EXEMPTED | ) | DEFENDANTS' MOTIONS |
| VILLAGE SCHOOLS BOARD | | TO DISMISS |
| OF EDUCATION, et al. | ) | |
| Defendants. | ) | |

Now come plaintiffs, by and through undersigned counsel, and hereby respond to defendants's motions to dismiss the case.  For the reasons set forth below, plaintiffs oppose the motion and ask the Court to overrule the motion.  Because all three motions bear some resemblance to each other, plaintiffs will address defendants' common arguments together, and where separate arguments are made in one or two of the motions, those arguments will be separately identified.

**BACKGROUND AND FACTUAL HISTORY**

Plaintiff Joseph Galloway was at all relevant times a student at the Chesapeake Union Exempted Village Schools, which is operated by defendant Chesapeake Union Exempted Village Schools Board of Education; Joseph also attended the Collins Career Center, which is operated by the Lawrence County Joint Vocational School District Board of Education and was housed inside Chesapeake High School.

Joseph has been diagnosed with Asperger's Disorder, ADHD, seizure disorder and specific learning disability.  He has been identified as a student with a disability pursuant to the Individuals with Disabilities in

1

Education Act (IDEA), 20 US.C. Section 1400 et seq., and Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973.

According to the Corrected Amended Complaint, Joseph has been the victim of disability-based discrimination, harassment and bullying by both teachers and students in the Chesapeake school system since 2005. The Corrected Amended Complaint ("CAC") lists examples of this almost daily discrimination, harassment and bullying, both in Joseph's Chesapeake curriculum and when he was enrolled in the Collins Career Center:  One teacher repeatedly questioned Joseph about his seizures in front of the entire class and questioned whether he really had seizures; students threw water on their pants to mock the fact that during seizures, Joseph could become incontinent, students would call him "seizure boy," with the knowledge and approval of the teacher, defendant Jeannie Harmon; a student destroyed a class project Joseph had constructed; students would move Joseph's belongings, hide his belongings, shove him and threaten to break his computer; steal his backpack, damage his computer; a student pulled a chair out from behind Joseph; a student punched him in the back; students encouraged Joseph to commit suicide; the bullying culminated in several sexual assaults, in which students would come up behind Joseph in a locker room and grind their penises into Joseph's back. See Paragraphs 19, 23.

According to the CAC, after each incident, Joseph's parents would inform school officials what had happened and ask for help; at each step, the school officials did nothing to stop the constant bullying, including failing to reign in the teachers who were perpetrating the bullying and/or encouraging it.  CAC, Para. 26,32. The Galloways complained to as many as 15 different school teachers and officials--including all of the individual defendants--about the bullying of their son.  CAC, Para. 26.

According to the CAC, the bullying and harassment became so severe and pervasive that Joseph's parents asked school officials from both Chesapeake and Lawrence County JVS to move Joseph away from one particular teacher, defendant Susan Arthur.  CAC, Para. 24.

Mr. and Mrs. Galloway even went so far as to consult with an autism expert, Marc Ellison, director of the West Virginia Autism Training Center and Marshall University; Mr. Ellison agreed to meet with school officials to educate them about Autism Spectrum Disorder, including Asperger's.  CAC, Para. 27.

Mr. and Mrs. Galloway met with defendant Joseph Rase, principal of Chesapeake High School, to discuss their concerns about the faculty's lack of knowledge of autism and the school's obligations under federal and state laws. CAC, Para. 28.

During that meeting, Mr. Rase said that Joseph was starting to act out in class and he showed them a document which he said was a petition signed by several students in Joseph's Collins Career Center class saying they wanted Joseph "out of there." Mr. Rase indicated that the teacher of the class, defendant Kim Williams, a Lawrence County employee, had also signed the petition. CAC, Para. 29.

As a result of the constant bullying and harassment that Joseph suffered, and which was ignored by the defendants, Joseph suffered physical injuries and emotional distress. His parents suffered emotional distress in seeing their son having to endure the bulling.

On December 5, 2011, plaintiffs filed a Complaint in this Court.

On May 4, 2012, plaintiffs filed the instant Corrected Amended Complaint.

On May 14, 2012, defendants Chesapeake, Scott Howard, Sam Hall, Joseph Rase and Jeannie Harmon filed a motion to dismiss.

On May 17, 2012, defendants Lawrence County JVS, Steve Dodgion and Susan Arthur filed a motion to dismiss.

On June 29, 2012, defendant Kim Williams filed a separate motion to dismiss (her motion was filed after the others due to service issues, which have since been resolved).

Contrary to the assertions of defendants, the facts as stated in the CAC and the resultant harm to the plaintiffs do state a claim for which relief can be granted.


## LAW AND ARGUMENT

### STANDARD FOR MOTION TO DISMISS

In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true and draw reasonable inferences in favor of the plaintiff. Directv, Inc. v. Treesh, 487 F.3d 471,476 (6th Cir. 2007).

## COUNT I--SUBSTANTIVE DUE PROCESS

_____Count I alleges that all defendants have violated plaintiffs' rights to substantive due process under the Fourteenth Amendment to the U.S. Constitution.

_____To prevail on a claim of a substantive due process violation, a plaintiff must prove that a defendant's conduct "shocks the conscience."  Nix. v. Franklin Cty. Sch. Dist., 311 F.3d 1373,1375 (11th Cir. 2002) "Actions intended to injure in some way unjustifiable by any government interest are those that are most likely to rise to the conscience-shocking level." Cty. of Sacramento v. Lewis, 523 U.S. 833,846 (1981). Punishment inflicted in the educational context may implicate substantive due process rights.  Webb v. McCullough, 928 F.2d 1151,1159 (6th Cir. 1987).

The Lawrence County defendants claim that Count I should be dismissed because Count I "does not allege any violation of a particular constitutional right, or in fact any right at all.  Instead, it merely alleges that Plaintiffs were intentionally and arbitrarily injured by government action."  Lawrence County motion at 4. Defendant Williams also claims her conduct does not shock the conscience.  Williams motion at 5.

This is not true.  Count I specifically alleges a violation of plaintiffs' constitutional right to substantive due process, "in that the defendants' conduct, as described above, was arbitrary and egregious, was intended to injure plaintiff in a way that was unjustifiable by any governmental interests and is the sort of governmental action that shocks the conscience." CAC at para. 51.

Lawrence County further states that the claims against the Lawrence County defendants "can be described as generally alleging that they knew about the alleged student-on-student bullying and failed to act to protect the student."  Lawrence County motion at 4-5.

This is also not true.  The allegations are not only that the defendants failed to take action against student-on-student bullying, but that the defendants acquiesced in sexual assaults and encouraged and in some cases, actually participated in the bullying of Joseph over the course of time and despite frequent complaints by the parents.  These allegations, taken as true, cross the line from negligence to conscience-shocking conduct.

4

The Chesapeake defendants acknowledge that in order for liability to attach, there "must be a showing that the supervisor encouraged this specific incident of misconduct or in some other way directly participated in it."  At a minimum, Plaintiff "must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Chesapeake motion at 4, quoting Bellamy v. Bradley, 729 F.2d 416,421 (6th Cir. 1984).  Yet defendants do not acknowledge that this is precisely what plaintiffs have alleged.

In this case, plaintiffs state a cause of action for substantive due process because, viewed in a light most favorable to the plaintiffs, a jury could find that it shocks the conscience that the defendants not only permitted the constant bullying and harassment of Joseph Galloway despite frequent complaints from his parents, but in several instances, actually encouraged or participated in it, such as when defendant Williams actually signed a petition, along with many students, seeking Joseph's removal from class.

As this Court held in Alexander v. Lawrence County Board of Developmental Disabilities, S.D. Ohio Case No. 1:10 cv 697, "As a special needs child, M.L. is particularly vulnerable which heightens Defendants' level of responsibility for M.L.'s well-being."  Alexander, supra at p. 10, citing Sagan v. Sumner Cnty. Bd. of Educ., 726 F.Supp.2d 868,885 (M.D.Tenn. 2010) and Dockery b. Barnett, 167 F.Supp.2d 597,604 (S.D.N.Y. 2001)(indicating that autistic children "are more vulnerable and less capable of communicating than other children").

The Chesapeake defendants, in their motion, incorrectly state that in order to sustain this claim, plaintiffs must show that the Board itself is the wrongdoer.  Chesapeake motion at 3-4.   Chesapeake also claims that there are not sufficient allegations regarding the administrators, Howard, Hall and Rase, to sustain the cause of action.  Chesapeake motion at 4-5.  The defendants claim that plaintiffs "have offered no factual allegations that are plausible on their face," but that "the only factual allegations are the spare, non-specific contentions" of 10 paragraphs in the CAC.  Chesapeake motion at 5.   Surely, defendants jest.

Plaintiffs must show that the acts constituting a constitutional deprivation were part of policy, custom or practice of the school board.  Plaintiffs have made allegations sufficient to sustain that burden at the motion to dismiss stage.  As recounted above, plaintiffs allege that Joseph was bullied almost daily for more than four

years,including various acts of physical aggression, sexual assault, verbal abuse, destruction of his property and threats; plaintiffs have alleged that at least two teachers actually encouraged or participated in the bullying and harassment and that the parents complained to no less than 15 teachers and administrators about the ongoing bullying and the schools' failure to address and curtail it.

Plaintiffs allege that defendants Howard and Dodgion, the two superintendents, had policy-making authority for the two public entities named as defendants.  These policy-makers knew about the bullying incidents occurring at their respective schools and by their "knowledge of, and refusal to take actin to curtail the constant bullying and harassment of Joseph Galloway, these administrator implicitly authorized, approved or knowingly acquiesced in the conduct of the other defendants...."  CAC at para. 40.

Further, plaintiffs allege that the defendants' "prior knowledge of Joseph's disabilities and the ongoing knowledge of he bullying and harassment he received in both the Chesapeake school system and CCC as a result of those disabilities and the failure to implement any procedures to prevent, diminish or stop such bullying and harassment; the defendants' actual harassment and bullying of Joseph and the administrators' encouragement of said bullying and harassment by both staff and students; the defendants' failure to properly train their staffs and failure to properly equip theirs staffs with the tools and skills necessary to successfully teach a child with autism and other disabilities; the complete failure of oversight by Chesapeake and Lawrence County administrators; the defendants' ongoing failure to properly educate Joseph according to his needs....", CAC at para. 41, constitute allegations of policies, practices and procedures that violate plaintiffs' rights.

Chesapeake attempts to invoke Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) to claim that the CAC is not detailed enough.  As this Court explained in Alexander, "To withstand the dismissal motion, the complaint 'does not need detailed factual allegations,' but it must contain 'more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." Alexander, supra, at 5, citing Twombly at 554-555.

The Lawrence County defendants attempt to re-define the factual allegations by claiming that the allegations "can be described as generally alleging that they knew about the alleged student-on-student bullying and failed to act to protect the student."  Lawrence County motion at 4-5; Williams motion at 4.

6

However, plaintiffs allege much more than knowing about the bullying and failing to protect; they allege that the teachers and administrators actually encouraged and in several instances participated in the bullying.

Defendants cite Doe v. Big Walnut Local School Dist. Bd. of Ed., 2011 U.S. Dist. LEXIS 81953 to support their position. However, a close reading of Doe shows that it actually supports plaintiffs' position.

In Doe, a disabled student was bullied, much the way Joseph was in the instant case. However, the big difference was that the school district took major steps to curtail the bullying; school officials devised a safety plan, which Doe's parents approved, and reviewed it and revised it as necessary; they disciplined Doe's tormenters; Doe was excused early from classes in which he was having problems with bullying; a teacher's aide was assigned to monitor Doe in the hallways, at lunch and on the playground; Doe was permitted to use a restroom in the office. In short, Big Walnut officials evaded liability because they did what they were supposed to do; they took action to protect a vulnerable student who was being harassed.

Similarly, in Mohat v. Mentor Exempted Village School Dist. Bd. of Ed., U.S. Dist. Ct., N.D. Ohio Case No. 1:09 cv 688, cited by defendants, the reason that case was dismissed was because plaintiffs could not show that school officials knew about the bullying that led to Eric Mohat's suicide.

The language used in both opinions is instructive.

> ...there is no evidence that Defendants acted with deliberate indifference to John Doe. There is, however, evidence that Defendants took steps to protect John Doe, including meeting regularly with his parents, disciplining the offending students, involving police when necessary and instituting a multi-faceted safety plan and then meeting to review that plan to ensure it was working.
> *****This was not a situation where [the school officials] turned a blind eye to John Doe's situation.
> *******
> The School Board will not be held liable unless Plaintiffs can establish "that an officially executed policy, or the toleration of a custom with the school district leads to, causes, or results in the deprivation of a constitutionally protected right." Monell v. Dept. of Soc. Services, 436 U.S. 658,691 (1978)....
> ***********
> Plaintiffs assert that, as noted in Doe v. Claiborne County, no school district would have an affirmative policy condoning personal injury, therefore the Court set forth standards that must be met to state a claim based on an "inaction theory" which is set forth as follows:
> 1) the existence of a clear and persistent pattern of abuse in the school;
> 2) notice or constructive notice on the part of the School Board;
> 3) The School Board's tacit approval of the unconstitutional conduct, such

7

> that their deliberate indifference in their failure to act can be said to amount
> to an official policy of inaction; and
> 4) that the School Board's custom was the "moving force" or direct causal
> link in the constitutional deprivation.
> Doe v. Claiborne County, 103 F.3d 495,508 (6th Cir. 1996)....Again, there is
> no evidence that Defendants turned a blind eye to any incidents Plaintiff
> John Doe brought to their attention. Accordingly, there is no evidence of an
> existence of a clear pattern of inaction or abuse by any school employees.
>
> Doe v. Big Walnut Local School Dist. Bd. of Ed., 2011 U.S. Dist. LEXIS
> 81953 (S.D. Ohio, 2011) at 9-10.

The Court in Mohat used similar language, after citing the same passage in Doe v. Claiborne County:

> In this case, the Complaint does not allege that the Board had any prior
> notice or constructive notice of the alleged harassment, or that the bullying
> would likely lead Eric to commit suicide....Certainly a school board should be
> expected to take action to address problems that affect the safety and well-
> being of its students, when it is aware of such problems. The Complaint,
> however, does not allege that the Board itself was ever made aware of the
> issues directly affecting Eric. Therefore, under the relevant law, Plaintiffs'
> Complaint does not state a cause of action against the Board for a violation
> of Plaintiffs' substantive due process rights under the Fourteenth
> Amendment of the U.S. Constitution.
> Mohat, supra at 14-15.

Lawrence County also cites S.S. v. Eastern Ky. Univ., 532 F.3d 445 (6th Cir. 2008). However, as is discussed in more detail below, The S.S. court overruled plaintiffs' claims because the school district did take action to combat the bullying that was alleged; in this case, there was no action taken.

Implicit in the language of Doe, S.S. and Mohat, and explicit in the language of Doe v. Claiborne County is the fact that in order for a plaintiff to maintain a cause of action for violation of substantive due process right, the plaintiff must allege that the school district knew about the bullying and adopted a policy of inaction. That did not occur in Doe v. Claiborne County and Mohat, which is why dismissal and/or summary judgment were granted in those cases. In this case, the factual scenario is much different; the allegation is that Joseph was bullied, that the school district was informed repeatedly by the parents, that they affirmatively took no action, and in some cases even encouraged or participated in the bullying.

8

## COUNT II--EQUAL PROTECTION

          Count II alleges that all defendants have violated plaintiffs' right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

          The Equal Protection Clause provides that no state shall deny a person equal protection of the law, "which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living. Ctr., 473 U.S. 432,439 (1985). Classifications based on disability are upheld as long as they are rationally related to a legitimate government purpose. Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356,368 (2001).

          The Lawrence County defendants claim that plaintiffs "have offered no allegations regarding the alleged differences in treatment" between Joseph and non-disabled students. Lawrence County motion at 6.

          However, plaintiffs clearly make just such an allegation. Plaintiffs allege that Joseph "was treated differently than similarly-situated non-disabled students in the regular education setting because non-disabled students were not regularly subjected to disability-based bullying, damaged property, sexual assault and verbal and physical harassment. The actions of defendants in allowing and acquiescing and failing to curtail and prevent such behavior is not rationally related to a legitimate governmental purpose." CAC at para. 54.

          Lawrence County also alleges plaintiffs have not made sufficient allegations to satisfy the pleading requirements of Iqbal and Twombly. Lawrence County motion at 6. Plaintiffs assert that they have made sufficient allegations and will leave it up to the Court to make this determination.

          Lawrence County also claims that Counts I and II should be dismissed against defendants Dodgion and Arthur because claims are made against these defendants in both their official and individual capacities and these claims are redundant. Lawrence County motion at 9. However, since defendants claim that both the claims against the defendants in their individual and official capacities should be dismissed, the claims are not automatically redundant. Plaintiffs agree that official capacity claims against an individual are the same as a claim against the entity, but if any of the claims against the entity are dismissed, or if an official capacity claim against an individual is merged with a claim against an entity, an individual capacity claim could still survive. So merely claiming that an official capacity claim against an individual is redundant because a claim

9

exists against an entity is insufficient.  The claims may not be redundant, depending on how this Court rules on the other parts of defendants' motion.

Plaintiffs allege, in quite a bit of detail, that Joseph was treated differently due to his disability; not only did non-disabled students tease him about his disability, but teachers from both Chesapeake and Lawrence County JVS encouraged the harassment and even participated in it.  Defendants have not shown, or even alleged, that these examples of disparate treatment are rationally related to a legitimate educational purpose. Viewing the CAC in a light most favorable to plaintiffs and construing all facts in a light most favorable to plaintiffs, plaintiffs state a claim for violations of Joseph's equal protection rights.

The Chesapeake defendants do not argue specifically that plaintiffs fail to state a claim regarding equal protection, but rather lump all of their constitutional arguments together under "Counts I and II" without really even mentioning why the equal protection claims against them should be dismissed.


## COUNT III--ADA AND SECTION 504

Count III alleges that defendants Chesapeake and Lawrence County have violated plaintiff Joseph Galloway's rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; and the Americans with Disabilities Act, 42 U.S.C. Section 12101-12213.

To establish a claim that he was discriminated against on the basis of his disability under the Rehabilitation Act or the Americans with Disabilities Act, plaintiff must show that (1) he is handicapped or disabled as defined in each statute, (2) he is "otherwise qualified" to continue in the program, and (3) he was discriminated against on the basis of his handicap or disability.  Andrews v. State of Ohio, 104 F.3d 803,807 (6th Cir. 1997), cited in Kaltenberger v. Ohio College of Podiatric Medicine, 162 F.3d 432, 435 (6th Cir. 1998). A handicapped or disabled person is "otherwise qualified" to participate in a program if he can meet its necessary requirements with reasonable accommodation.  Sandison v. Michigan High Sch. Athletic Ass'n., Inc., 64 F.3d 1026, 1034 (6th Cir. 1995).  Joseph was qualified to be in the Chesapeake educational systems and the Lawrence County JVS system, as evidenced by the fact that he was accepted into the program and continued there for several years.  At this stage, plaintiffs have adequately plead facts which would lead to the

10

conclusion that Joseph was discriminated against based on his disability.

The ADA represents a broad congressional mandate to eliminate discrimination against the disabled and to integrate the disabled into the mainstream of American life. PGA Tour, Inc. v. Martin, 532 U.S. 661,676-77 (2001). A disability includes "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. Section 12102(2)(A).

Title III of the ADA prohibits disability discrimination at places of public accommodation. Under that provision, "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who...operates a place of public accommodation." 42 U.S.C. Section 12182(a).

Discrimination includes: "A failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. Section 12182(b)(2)(A)(ii). 42 U.S.C. Section 12181(7)(J) defines a place of public accommodation as "a nursery, elementary, secondary, undergraduate or post-graduate private school, or other place of education." Thus, schools are defined as places of public accommodation.

The Sixth Circuit has applied the test enunciated in Davis v. Monroe County Board of Ed., 526 U.S. 629 (1999) regarding Title IX student-on-student sexual harassment to ADA/504 claims of student-on-student disability-based harassment. S.S. v. Eastern Kentucky University, 532 F.3d 445, hn6 (6th Cir. 2008). The S.S. court adopted a five-part test to determine if a plaintiff could sustain a disability-based peer-on-peer claim. The plaintiff must show: 1) the plaintiff is an individual with a disability; 2) he or she was harassed based on that disability; 3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, 4) the defendant knew about the harassment, and 5) the defendant was deliberately indifferent to the harassment. S.S. at hn7.

In this case, a number of the incidents listed in the CAC are disability-based; the harassment based

on Joseph's seizures, including incidents in which the teacher actually condoned or encouraged the harassment and embarrassed Joseph in front of the class about his seizures; a teacher telling him he was "acting crazy;" teasing and name-calling based on his disability.  These incidents occurred regularly and when Joseph was in both the jurisdiction of Chesapeake and Lawrence County JVS.

Lawrence County claims that plaintiffs "allege insufficient facts to show that the Lawrence County JVS was made aware of any of the incident allegedly occurring in its classroom and under its control."  Lawrence County motion at 11. Chesapeake claims plaintiffs "minimally describe a variety of events regarding unnamed students and teachers employed by LCJVS...without any facts indicating that these alleged occurrences were in any way related to Joseph Galloway's claimed disability."  Chesapeake motion at 10.

However, the CAC alleges that Joseph was subjected to almost daily bullying at both Chesapeake High School and at the Collins Career Center (which was operated by Lawrence County JVS).  See CAC para 23-25.  Mr. and Mrs. Galloway met repeatedly with officials from both Chesapeake and Lawrence County JVS, including superintendent Dodgion.  CAC para 26,31.

Several courts have recognized hostile educational environment claims under Section 504 and the ADA.

> Title III of the Americans with Disabilities Act, 42 U.S.C.A. Section 12182 (1988), provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation...." The Rehabilitation Act, 29 U.S.C.A. Section 794(a) (as amended 1992), states that "no otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Both statutes apply to discrimination by educational facilities in receipt of federal funds...and neither limits its prohibitions to discrimination in the employment context.

> The language of both Title III of the ADA and Section 504 of the Rehabilitation Act is substantially similar to Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681-88 (1988), which courts have held is the statutory basis for hostile learning environment claims based on sexual harassment (citations omitted).
> *******

> Persuaded by this line of cases interpreting the analogous language and policies of Title VII and Title IX, I conclude there is a cause of action under

the ADA and the Rehabilitation Act for a hostile learning environment when harassment based on a student's disability has "the purpose or effect of unreasonably interfering with [the] individual's performance or [of] creating an intimidating, hostile or offensive environment." Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525,540 (1st Cir. 1995). This conclusion is consistent with the express congressional purpose in enacting the ADA to "address the major areas of discrimination faced day-to-day by people with disabilities....Harassment based on disability is no less potent, disruptive, or discriminatory on a university campus or in a classroom than on an assembly line or in a boardroom. See Franklin v. Gwinnett County Pub.Schs., 503 U.S. 60,74-75 (1992).("[A] student should have the same protection in school that an employee has in the workplace.")
*********

To state a cognizable claim for hostile learning environment harassment under the ADA and Rehabilitation Act, a plaintiff must allege: (1) that she is a member of a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment is based on a protected characteristic, her disability, (4) that the harassment is sufficiently severe or pervasive that it alters the conditions of her education and creates an abusive educational environment, and (5) that there is a basis for institutional liability. See Brown, 68 F.3d at 540 (citing Meritor Sav. Bank, Fsb v. Vinson, 477 U.S. 57,66-66-73 (1986)).

Guckenberger v. Boston Univ., 957 F.Supp. 306, 313-314 (D. Mass, 1997).

See also Gaither v. Barron, 924 F.Supp. 134,136 (M.D. Ala. 1996) (using Title VII's hostile work environment theory to analyze a harassment claim brought by a disabled student); and Pell v. Columbia Univ., 1998 U.S. Dist. LEXIS 407 (S.D. N.Y. 1998) (concurring with the reasoning in Guckenberger); K.M. v. Hyde Park Central School Dist., 381 F.Supp.2d 343 (S.D.N.Y. 2005) at hn 8 (a school district's deliberate indifference to pervasive, severe disability-based harassment that effectively deprived a disabled student of access to the school's resources and opportunities would be actionable under Section 504 and Title II).

In this case, accepting all factual assertions as true and construing the facts in the light most favorable to the plaintiffs, Joseph was continually harassed, partially due to his disability.

He was the victim of sexual assaults. His own teachers participated in the discrimination. When his parents complained, nothing was done to stop the harassment and discrimination. It is not necessary at this point for plaintiffs to identify instances in which non-disabled students were harassed and treated differently, since the CAC indicates that there is direct evidence of disability discrimination. Plaintiffs have more than met the threshold for overcoming a motion to dismiss.

13

The Rehabilitation Act of 1973 also prohibits discrimination based on disability, but it only applies to entities that receive federal funding.

While claims under the ADA and the Rehabilitation Act are largely the same, the defendant must also receive federal funds to establish a claim under the Rehabilitation Act. McPherson v. Michigan High Sch. Athletic Ass'n., Inc., 119 F.3d 453, 459-60 (6th Cir. 1997).

A plaintiff's ADA and Section 504 claims may be analyzed together because the statutes provide the same remedies, procedures and rights. S.S. v. Eastern Kentucky University, 532 F.3d 445, hn4 (6th Cir. 2008).

In this case, the defendants do not deny that Lawrence County JVS and Chesapeake receive federal funds, so this is not an issue. The substantive issues are the same for the Rehabilitation Act claims as they are for the ADA claims, and plaintiff incorporates the ADA arguments and case law into the argument in support of overruling the motion to dismiss the Rehabilitation Act claims. Since the ADA and Rehabilitation Act are essentially the same, if the ADA claim remains in tact, so too should the Rehabilitation Act claim.

## COUNT IV--TITLE IX

Count IV alleges that defendants Chesapeake and Lawrence County violated plaintiff Joseph Galloway's rights under Title IX, 20 U.S.C. Section 1681.

Title IX provides that, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance...." 20 U.S.C. Section 1681.

Title IX can support a cause of action for a claim of student-on-student sexual harassment against a recipient of federal funds. Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 633 (1999).

To establish a prima facie case of student-on-student sexual harassment, the plaintiff must demonstrate each of the following elements:

> 1) the sexual harassment was so severe, pervasive and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school,

14

2) the funding recipient had actual knowledge of the sexual harassment, and

3) the funding recipient was deliberately indifferent to the harassment.

Vance v. Spencer County Public School Dist., 231 F.3d 253, 258-259 (6th Cir. 2000).

The deliberate indifference "must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." Vance, 231 F.3d at 260, quoting Davis, 526 U.S. at 645. "[A] plaintiff may demonstrate [a] defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassments or lack thereof is clearly unreasonable in light of the known circumstances." Vance at 260, quoting Davis at 648. "...where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstance to eliminate the behavior. Where a school has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances. Vance at 261.

Relying on this language, one district court determined that where a student suffered four years of harassment from various other students, a school district's "tactic of merely talking to and warning students who harassed plaintiff," with occasional investigation into "some of the more significant incidents and even eventually proactively speaking to students and teachers in an effort to prevent further incidents...raised a genuine issue of material fact sufficient to withstand summary judgment." Theno v. Tonganoxie Unified Sch. Dist. No. 464, 377 F.Supp.2d 952,966 (D.Kan.2005), quoted in Patterson v. Hudson Area Schools, 551 F.3d 438,446 (6th Cir. 2009).

In Patterson, like in the present case, a young man was constantly abused, bullied and harassed, culminating in an incident in a locker room in which a another young man stripped naked, jumped on the plaintiff's shoulders "and rubbed his penis and scrotum on [the plaintiff]'s neck and face." The Court correctly called this a "sexual assault." Patterson at 442.

Despite the fact that the school district took some actions against specific students, the harassment continued. The Sixth Circuit overturned the district court's grant of summary judgment to the school district,

citing its earlier ruling in <u>Vance</u> that "once [a school district] had knowledge that its response was inadequate, it was required to take further reasonable action in light of the circumstances to avoid new liability." <u>Patterson</u> at 447 quoting <u>Vance</u> at 262.  "We believe this language makes clear that, even though a school district takes some action in response to known harassment, if further harassment continues, a jury is not precluded by law from finding that the school district's response is clearly unreasonable.  We cannot say that, as a matter of law, a school district is shielded from liability if that school district knows that its methods of response to harassment, though effective against an individual harasser, are ineffective against persistent harassment against a single student.  Such a situation raises a genuine issue of material fact for a jury to decide." <u>Patterson</u> at 447.

In this case, which is at the dismissal stage, not the summary judgment stage, Joseph was repeatedly sexually assaulted, like the student in <u>Patterson</u>.  But the CAC in this case alleges that the school district took <u>no</u> action, even when told of the repeated harassment, including sexual assaults; even when an expert was hired by the parents who offered to train the school district, nothing was done and nothing changed.  Given the standard set forth by the Sixth Circuit in <u>Patterson</u> and <u>Vance</u>, this Court should not dismiss the Title IX claims at this stage.

Lawrence County claims that this count should be dismissed as to Lawrence County, because the allegations of sexual assault and sexual harassment occurred within the jurisdiction of Chesapeake and not Lawrence County.  Lawrence County motion at 12.  Chesapeake attempts to minimize what happened to Joseph by calling it "juvenile behavior" and calls it the type of "insults, banter, teasing, shoving, pushing and gender-specific conduct" that the Supreme Court held does not rise to the level of discrimination." Chesapeake motion at 13.

To call what happened to Joseph (penises rubbed on his body) "juvenile behavior" or equivalent to "insults, banter, teasing, shoving and pushing" is an insult to Joseph and an unseemly attempt to redefine the incidents and evade responsibility.

Plaintiffs allege that officials from Lawrence County are liable for incidents that occurred at Chesapeake, and vice versa, because administrators at each entity knew what was happening at the other

16

entity.  "...by their knowledge of, and refusal to take action to curtail the constant bullying and harassment of Joseph Galloway, these administrators implicitly authorized, approved or knowingly acquiesced in the conduct of the other defendants, constituting a deliberate indifference to Joseph's rights."  CAC, para. 40.

Because Lawrence County's program was located in Chesapeake High School, and because Mr. and Mrs. Galloway made a point of telling officials from both entities about incidents occurring at both entities, neither entity can escape liability, since each administration could have controlled, or at lest influenced, what was happening to Joseph at the other entity.


**COUNT V--MONELL**

Count V alleges that defendants Chesapeake and Lawrence County have policies and practices that violate their obligations pursuant to Monell v. Dept. of Social Services, 436 U.S. 658 (1978) to maintain lawful policies, practices and procedures as to plaintiff Joseph Galloway.

As will be shown below, plaintiffs have identified a policy, practice or custom that resulted in a violation of plaintiffs' rights.

To establish a Section 1983 claim against a local government, there must be a policy or custom behind the deprivation of a constitutional right.  Monell v. Dep't. of Soc. Servs. of N.Y., 436 U.S. 658,690-691 (1978). The custom or policy must be the "moving force of the constitutional violation."  Id. at 694.

A government entity cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior.  Monell v. Dept. of Social Servs., 436 U.S. 658,691 (1978).  Instead, plaintiffs must demonstrate that the violation of their rights was caused by either a policy or a custom of the municipality.  Id.

"Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."  Kneipp v. Tedder, 95 F.3d 1199,1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469,481 (1986) (plurality opinion).  Customs are "'practices of state officials...so permanent and well settled' as to virtually constitute law."  Id. quoting Monell, 436 U.S. at 691.  See also Sliva v. Worden, 130 F.3d 26,31 (1st Cir. 1997) (stating custom is demonstrated by showing "practice is so well settled and widespread that the policymaking officials have either

actual or constructive knowledge of it").

Once a Section 1983 plaintiff identifies a municipal policy or custom, he must "demonstrate that through its deliberate conduct,' the municipality was the 'moving force' behind the injury alleged." Board of County Comm'rs. of Bryan County v. Brown, 520 U.S. 397,404 (1997). If a policy or custom does not facially violate federal law, causation can be established only by "demonstrating that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Id. at 407. See also, City of Canton, Ohio v. Harris, 489 U.S. 378,389 (1989).

In this case, contrary to the assertions of defendants that plaintiffs "have not alleged the existence of such a policy or custom at Lawrence County JVS," Lawrence County motion at 8, plaintiffs allege that the school district defendants had a policy of ignoring bullying, encouraging bullying and even allowing staff-members to participate in bullying. Further, plaintiffs allege that defendants Chesapeake and Lawrence County failed to properly train their officials and teachers in proper methods of educating children with disabilities, and failed train their officials in operating schools in which a student such as Joseph was regularly and on an ongoing basis mistreated, and failed to properly oversee and supervise Joseph's education. CAC at para. 63.

The school boards, through their designated decision-makers, the superintendents, made choices to permit the bullying, to ignore their own stated policies which prohibit bullying, and to ignore 10 years of admonitions from state and federal educational institutions regarding how to combat bullying. Thus, plaintiffs have stated a claim for unlawful policies and practices under Monell. precluding dismissal.


## COUNT VI--NEGLIGENCE

Count VI alleges that all defendants are liable for negligence and gross negligence under Ohio law as to plaintiff Joseph Galloway.

In order for plaintiff to establish negligence, he must prove 1) defendant owed him a duty 2) that duty wp breached; and 3) that breach of duty proximately caused plaintiff's injury. Moncol v. Bd. of Ed. (1978) 55

Ohio St.2d 72,75.  As to the first element, a teacher in a public school has been held to an ordinary duty of reasonable care in exercising his or her duties.  Baird v. Hosmer (1976), 46 Ohio St.2d 273, syllabus.  This is the same duty owed by the general public to other people.

The defendants have not denied the claims of negligence and gross negligence, but rather have claimed that they are immune from liability for that negligence.


**POLITICAL SUBDIVISION IMMUNITY**

Defendants correctly state that the two entities, Chesapeake and Lawrence County, are immune from liability for negligence.

However, the individual employees are not immune.

Plaintiffs agree with defendants' recitation of the three-part test for employee immunity under O.R.C. 2744.03(A)(6).  Plaintiffs assert that the individual defendants are not immune because they acted "with malicious purpose, in bad faith or in a wanton or reckless manner."

As this Court stated in Alexander, the question of whether behavior constitutes reckless or wanton conduct so as to fall within the exception to statutory immunity, is ordinarily a factual question for a jury to decide.  Alexander, supra at 26, citing Fabrey v. McDonald Police Dep't., 639 N.E.2d 31,35 (Ohio, 1994).  At this stage, plaintiffs do not need to show with great specificity how each defendant contributed to the alleged violations; rather, plaintiffs must only state allegations generally so as to provide notice as to the nature of the injury.  Alexander, supra at 26.

Plaintiffs have met that standard regarding the individual defendants; while plaintiffs have not matched up each alleged violation with each defendant, they have put all defendants on notice that they are alleging that Joseph Galloway was repeatedly bullied and harassed, including being sexually assaulted, in both the Chesapeake schools and in the Collins Career Center.  He was verbally teased, physically and sexually assaulted, his property was stolen, damaged and destroyed, he was publicly embarrassed by students and teachers, and his parents complained to numerous school officials from both schools about this conduct.  The defendants failed to take any action to alleviate the situation.  Plaintiffs have provided sufficient facts from

19

which a jury could conclude that defendants' conduct was negligent and fell within the exception to immunity.

## CLAIMS OF MR. AND MRS. GALLOWAY

Mr. and Mrs. Galloway have made claims that their rights to substantive due process and equal protection were violated.  Defendants have asserted that these claims do not exist.

Defendants cite Jenkins v. Rock Hill Local School District,513 F.3d 580,590-91 (6th Cir. 2008), Alexander v. Lawrence County Bd. of DD, supra and Stallworth v. Cleveland, 893 F.2d 830 (6th Cir. 1990) in support of these contentions.

However, Stallworth involved a derivative claim by parents involving their adult child and is therefore inapposite.

In Alexander, this Court did not say that it was not possible for a parent's rights to be violated when her child's rights are violated; this Court said that the mother did not state a claim for procedural due process because she was not deprived of the custody of her child.  Plaintiffs did state a claim for substantive due process, and the Court did not specifically say that the mother's claims were dismissed.  In fact, the Court said: "...Plaintiffs allege sufficient facts to state a claim for a substantive due process violation." Alexander, supra at 13, emphasis added.

The Court dismissed the equal protection claim of plaintiffs in Alexander, but it was because the Court did not find enough factual support for the disparate treatment claim, not because the mother did not have a claim of her own.

Similarly, in Mohat, supra, the Court analyzed the parents' claims and found there was not enough factual support, rather than that the parents were somehow jurisdictionally precluded from bringing claims on their own based on the conduct of defendants toward their son.

As the Third Circuit said: "There is a cognizable liberty interest in preserving the life and physical safety of a minor child, a right that logically extends from a parent's recognized liberty interest in the custody of his or her children and the maintenance and integrity of the family." McCurdy v. Dodd, 352 F.3d 820, Hn7 (3d Cir. 2003).  While parents' claims typically stem from child custody cases, there is no rule or black-letter law that

says that this analysis couldn't be applied to a situation such as this, where parents must watch the physical and emotional deterioration of their disabled child after being routinely ignored by school officials who are violating their child's rights.  This would certainly interfere with the parents' right to raise their child and to further their interest in preserving the life and physical safety of their child.  The parents' claims should not be dismissed at this stage.


## CONCLUSION

For the reasons set forth above, and with the exceptions noted above, the motions for dismissal should be overruled.


Respectfully submitted,


/s/Kenneth D. Myers
KENNETH D. MYERS [0053655]
6100 Oak Tree Blvd., Suite 200
Cleveland, OH  44131
(216) 241-3900

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE


A copy of the foregoing has been sent to all parties via the Court's electronic filing system on this 9th day of July, 2012.


/s/Kenneth D. Myers
KENNETH D. MYERS

Attorney for Plaintiffs