UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH GALLOWAY, *et al.*, | : | Case No. 1:11-cv-850 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CHESAPEAKE UNION EXEMPTED | : | |
| VILLAGE SCHOOLS BOARD OF | : | |
| EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER: (1) CHESAPEAKE DEFENDANTS' MOTION TO DISMISS (Doc. 21) IS
GRANTED IN PART AND DENIED IN PART; (2) LAWRENCE COUNTY
DEFENDANTS' MOTION TO DISMISS (Doc. 22) IS GRANTED IN PART AND
DENIED IN PART; and (3) DEFENDANT WILLIAMS'S MOTION TO DISMISS
IS GRANTED IN PART AND DENIED IN PART (Doc. 30)**

This civil action is before the Court on: (1) Defendants Chesapeake Union

Exempted Village School District Board of Education, Scott Howard, Sam Hall, Joseph

Rase, and Jeannie Harmon's[1] motion to dismiss (Doc. 21); (2) Defendants Lawrence

County Joint Vocational School District Board of Education, Steve Dodgion, and Susan

Arthur's[2] motion to dismiss (Doc. 22); (3) Defendant Kimberly Williams's[3] motion to

dismiss[4] (Doc. 30); and (4) the parties' responsive memoranda (Docs. 31, 32, 33).

---

[1] Scott Howard and Sam Hall were both superintendents at Chesapeake Union Exempted Village Schools (Doc. 19 at ¶¶ 6-7), Joseph Rase was the principal at Chesapeake High School (*Id.* at ¶ 11), and Jeannie Harmon was a classroom teacher at Chesapeake High School (*Id.* at ¶ 8). These Defendants are collectively referred to as the "Chesapeake Defendants."

[2] Steve Dodgion was the superintendent for the Lawrence County Joint Vocational School District (Doc. 19 at ¶ 10), and Susan Arthur was a classroom teacher at Collins Career Center (*Id.* at ¶ 12).

[3] Kimberly Williams was a classroom teacher at Collins Career Center. (Doc. 19 at ¶ 12).

[4] Defendants Lawrence County JVS, Dodgion, Arthur, and Williams are collectively referred to as the "Lawrence County Defendants."

## I.  FACTUAL BACKGROUND <u>AS ALLEGED BY THE PLAINTIFFS</u>[5]

For purposes of these motions to dismiss, the Court must: (1) view the Amended Complaint in the light most favorable to the Plaintiffs; and (2) take all well-pleaded factual allegations as true.  *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff Joseph Galloway was at all relevant times a student at the Chesapeake Union Exempted Village Schools, which is operated by defendant Chesapeake Union Exempted Village Schools Board of Education.  Joseph also attended the Collins Career Center, which is operated by the Lawrence County Joint Vocational School District Board of Education and was housed inside Chesapeake High School.

Joseph has been diagnosed with Asperger's Disorder, ADHD, seizure disorder, and specific learning disability.  He has been identified as a student with a disability pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*., the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973.

Joseph has been the victim of disability-based discrimination, harassment, and bullying by both teachers and students in the Chesapeake school system since 2005.  The Amended Complaint lists examples of this almost daily discrimination, harassment, and bullying, both in Joseph's Chesapeake curriculum and when he was enrolled in the Collins Career Center.  For example: one teacher repeatedly questioned Joseph about his seizures in front of the entire class and questioned whether he really had seizures;

---

[5]  Plaintiffs include James and Beth Galloway and their son, Joseph Galloway.

students threw water on their pants to mock the fact that during seizures Joseph could become incontinent; students would call Joseph "seizure boy," with the knowledge and approval of the teacher; a student destroyed a class project Joseph had constructed; students would move Joseph's belongings, hide his belongings, shove him, threaten to break his computer, steal his backpack, and damage his computer; a student pulled a chair out from behind Joseph; a student punched Joseph in the back; students encouraged Joseph to commit suicide; and the bullying culminated in several sexual assaults, in which students would come up behind Joseph in a locker room and grind their penises into Joseph's back.  (Doc. 19 at ¶¶ 19, 23).

After each incident, Joseph's parents would inform school officials what had happened and ask for help, but at each step, the school officials did nothing to stop the constant bullying, including failing to reign in the teachers who were perpetrating the bullying and/or encouraging it.  (Doc. 19 at ¶¶ 26, 32).  The Galloways complained to as many as fifteen different school teachers and officials, including all of the individual defendants, about the bullying of their son.  (*Id.* at ¶ 26).  The bullying and harassment became so severe and pervasive that Joseph's parents asked school officials from both Chesapeake and Lawrence County to move Joseph away from one particular teacher, Defendant Susan Arthur.  (Doc. 19 at ¶ 24).

Mr. and Mrs. Galloway even went so far as to consult with an autism expert, Marc Ellison, director of the West Virginia Autism Training Center and Marshall University.

Mr. Ellison agreed to meet with school officials to educate them about Autism Spectrum Disorder, including Asperger's.  (Doc. 19 at ¶ 27).

Mr. and Mrs. Galloway met with Defendant Joseph Rase, principal of Chesapeake High School, to discuss their concerns about the faculty's lack of knowledge of autism and the school's obligations under federal and state laws.  (Doc. 19 at ¶ 28).  During that meeting, Mr. Rase said that Joseph was starting to act out in class and he showed them a document which he said was a petition signed by several students in Joseph's Collins Career Center class saying they wanted Joseph "out of there."  Mr. Rase indicated that the teacher of the class, Defendant Kim Williams, a Lawrence County employee, had also signed the petition.  (*Id*. at ¶ 29).

As a result of the constant bullying and harassment that Joseph suffered, and which was ignored by the Defendants, Joseph suffered physical injuries and emotional distress. His parents also suffered emotional distress in seeing their son endure the bullying.

Plaintiffs' Amended Complaint contains six causes of action.  Counts I (substantive due process), II (equal protection), and VI (negligence) are alleged against all Defendants, both individual and governmental.  Counts III (ADA and Section 504), IV (Title IX), and V (*Monell* claims) are directed only against Chesapeake and Lawrence County School Boards.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a

claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)).

### III.    ANALYSIS

**A.    Section 1983 Claims**

Count I (substantive due process) and Count II (equal protection) purport to arise under the Fourteenth Amendment of the United States Constitution and are brought pursuant to 42 U.S.C. Section 1983.

Section 1983 authorizes claims for relief against any person who, acting "under color of any [state] statute, ordinance, regulation, custom, or usage," deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws." *Gomez v. Toledo*, 446 U.S. 635, 638 (1980).  To prevail on a claim under § 1983, a plaintiff must prove:  (1) that the defendant deprived the plaintiff of a right secured by the United States Constitution or federal statute; and (2) that the defendant acted under color of state law.  *Id.* at 640.  In evaluating this type of claim against a local government entity the Court must also apply a two-part test: (1) the plaintiff must have sufficiently established a constitutional violation and (2) the Court must determine whether the local government entity caused the constitutional violation.  *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

### 1.    *Substantive Due Process* (Count I)

Plaintiffs allege that Defendants violated Joseph Galloway's substantive due process rights by failing to protect him from the bullying of other students, teachers, and staff.

As the Sixth Circuit explained in *Howard v. Grinage*, "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards."  82 F.3d 1343, 1350 (6th Cir. 1996).  The substantive component of the Due Process Clause protects "fundamental rights otherwise not explicitly protected by the Bill of Rights" and serves "as a limitation on official misconduct which, although not infringing on a fundamental right," is so oppressive that it shocks the conscience.  *Id*. at 1349.  Fundamental rights are those specifically guaranteed by the United States Constitution and those rights that are "implicit in the concept of ordered liberty."  *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).  These generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

The Sixth Circuit has held that "[i]f the right to bodily integrity means anything, it certainly encompasses the right not to be sexually assaulted under color of state law." *Doe v. Big Walnut Local Sch. Dist. Bd. of Educ.*, 837 F. Supp. 2d 742, 751 (S.D. Ohio 2011).  However, the Sixth Circuit's conclusion that a sexual assault clearly implicates the fundamental right to "bodily integrity" does not extend to "verbal taunting" or bullying.  *Marcum v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.*, 727 F. Supp. 2d 657, 673 (S.D. Ohio 2010).  In *Doe*, the perpetrator of the sexual harassment was a teacher, a state actor.  However, in the case at bar, the individuals who have allegedly

-7-

sexually harassed Joseph are fellow students.  While there are allegations that the teachers and administrators verbally taunted Joseph and failed to remedy the harassment, there are no allegations that they sexually assaulted him.[6]  The Substantive Due Process Clause protects individuals from abuses of government power and does not impose a constitutional duty on the school to protect students from harm inflicted by private actors, such as their classmates.  *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).[7]

Accordingly, Plaintiffs fail to state the underlying constitutional right Defendants violated.  Therefore, the substantive due process claim is dismissed as a matter of law.

### 2.  *Equal Protection* (Count II)

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro. Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995).  The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v.*

---

[6]  Plaintiffs fail to cite any case where a court found that a constitutional right was violated where defendants failed to take action against students who were allegedly engaged in sexual assaults.

[7]  *See, e.g., Doe*, 837 F. Supp. 2d at 750 (no substantive due process claim for failing to protect student from "physically aggressive behavior" of other students); *Mohat v. Mentor Ex. Vill. Sch. Dist. Bd. of Educ.*, No. 1:09cv688, 2011 U.S. Dist. LEXIS 58319 (N.D. Ohio June 1, 2011) (no substantive due process claim for failing to protect student from bullying that resulted in student's suicide).

*Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006).  It is important to clarify that "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decision-makers from treating differently[,] persons who are in all relevant respects alike." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008).  "In essence, a [s]tate must treat similarly situated individuals in a similar manner." *Id.*  However, because people with disabilities "are not [considered] a [protected or] suspect class for purposes of an equal protection challenge[,] . . . [a] state may . . . treat disabled students differently, so long as its actions are rationally related to some legitimate governmental purpose." *Id.*

Plaintiffs maintain that Joseph Galloway "was treated differently than similarly-situated non-disabled students in the regular education setting because non-disabled students were not regularly subjected to disability-based bullying, damaged property, sexual assault and verbal and physical harassment.  The actions of defendants in allowing and acquiescing and failing to curtail and prevent such behavior is not rationally related to a legitimate governmental purpose." (Doc. 19 at ¶ 54).  Specifically, Plaintiffs claim that "Joseph has been deprived of equal access to educational opportunities due to his disabilities, in violation of the U.S. Constitution and federal and state statutory law. (*Id.* at ¶ 44).

### a.    School boards

Plaintiffs pursue an equal protection claim against Chesapeake and Lawrence County Boards of Education under a theory of *respondeat superior*.  However, "respondeat superior is not available as a theory of recovery under §1983." *Doe*, 103 F.3d at 507.  In order to establish liability against the Defendant school boards under Section 1983, Plaintiffs "must show that the School Board itself is the wrongdoer." *Id.* at 507.

Under *Monell*, the school boards "cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." 436 U.S. at 690-91.  "A 'custom' for purposes of *Monell* liability must 'be so permanent and well-settled as to constitute a custom or usage with the force of law.'" *Doe*, 103 F.3d at 507.

As explained *infra* at Section III.E, Plaintiffs have failed to allege any direct causal link between a policy or custom and any alleged disparate treatment.  Accordingly, Plaintiffs' equal protection claim as to the school boards is dismissed.

### b.  Defendants Dodgion, Howard, Hall, and Rase in their individual capacities

Defendants Dodgion, Howard, and Hall, as superintendents, and Rase, as a principal, are alleged to have had knowledge of the bullying and failed to act upon that knowledge.  Section "1983 liability of supervisory personnel must be based on more than the right to control employees.  Section 1983 liability will not be imposed solely upon the basis of *respondeat superior*.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  At a minimum, Plaintiffs "must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Id.* at 421. Defendants allege that Plaintiffs do not make any factual allegations regarding any direct participation, authorization, or knowing acquiescence by Defendant in any misconduct by their staff members.  *See, e.g., Rogers v. City of Port Huron*, 833 F.Supp. 1212, 1222 (dismissing Section1983 claim against police chief under 12(b)(6) where plaintiffs did not allege the chief implicitly authorized, approved, or knowingly acquiesced to alleged misconduct).[8]

---

[8]  Defendants cannot be found liable under Section 1983 for negligent or reckless supervision because there is no "supervisory liability" but instead each government official is only liable for his or her own misconduct.  Under Section 1983 even "sloppy, reckless, or neglectful" supervision does not give rise to liability.  *Doe*, 103 F.3d at 513.  Instead, deliberate indifference is required.  *Id.* at 512.

Here, Plaintiffs allege that:

> After each incident, Mr. or Mrs. Galloway informed school officials,
> from Chesapeake and/or Lawrence County, about what had happened
> and asked for help; at each step, the school officials did nothing to
> stop the constant bullying. Among the school officials Mr. and Mrs.
> Galloway complained to about the bullying and harassment, were
> Chris Smith, vice principal of Chesapeake High School; Julie Mayo,
> Director of Special Education for the Chesapeake School System;
> Kim Wells, principal of Chesapeake Middle School and eventually
> curriculum director for the Chesapeake School System; Jeff
> Williams, supervisor of the Project Lead-the-Way program and Mrs.
> Williams' husband; Greg Michaels, intervention specialist at
> Chesapeake High School; defendants Howard, Dodgion, Rase, Hall,
> Williams and Arthur; and all of Joseph's classroom teachers over the
> years, numbering approximately 15. (Doc. 19 at ¶ 26).[9]

Accordingly, Plaintiffs have made factual allegations that Defendants knew about

the disparate treatment of Joseph Galloway by their faculty and staff, yet did nothing to

remedy the problem.  The Court finds that this constitutes knowing acquiescence.

---

[9]  Additionally, Plaintiffs allege that:

a)  On February 25, 2010, Mr. and Mrs. Galloway met with Joseph Rase, principal of
Chesapeake High School, to discuss their concerns about the faculty's lack of knowledge
of autism and the school's obligations under federal and state laws.  (Doc. 19 at ¶ 28).

b)  In October, 2010, Mr. and Mrs. Galloway met with several Chesapeake officials,
including defendant Howard, the superintendent. At that meeting, Debbie Riggs, the head
of the Chesapeake teachers' union, stated that she would not report a teacher who harassed
a disabled student. (*Id.* at ¶ 30).

c)  On numerous other occasions, the Galloways met with or communicated with officials of
both Lawrence County JVS and Chesapeake, including defendants Howard, Dodgion, Hall
and Rase, to report bullying and harassment incidents that had occurred both at Lawrence
County JVS and Chesapeake, both in class and outside of class, including the incidents
enumerated above. (*Id.* at ¶ 31).

d)  In each case, the defendants failed to take appropriate action to curtail the bullying and
harassment, including when teachers encouraged the behavior. (*Id.* at ¶ 32).

-12-

Therefore, Plaintiffs have properly alleged equal protection claims against Defendants Dodgion, Howard, Hall, and Rase in their individual capacities.

### c.    Williams, Harmon, and Arthur in their individual capacities

Plaintiffs allege equal protection violations against teachers Williams, Harmon, and Arthur in their individual capacities.  Plaintiffs made the following specific allegations against Ms. Williams:

> a)    During a Project Lead-the-Way class in Joseph's tenth grade year, two other students told Joseph they wanted him to "hang himself, let us watch, we will tighten the noose, dig your grave, cut the rope after you're dead and cover you up with dirt." Joseph asked the teacher, Mrs. Williams, if he could be taken out of the group in which he was placed and the teacher refused, so Joseph went to the Chesapeake High School assistant principal, who told him he needed to learn to "work it out." (Doc. 19 at ¶ 23).

> b).    Mr. Rase said that Joseph was starting to act out in class and he showed them [Mr. and Mrs. Galloway] a document which he said was a petition signed by several students in Joseph's CCC classes saying they wanted Joseph "out of there." Mr. Rase indicated that the teacher of the class, Kim Williams, a Lawrence County employee, had also signed the document. (*Id.* at ¶ 29).

Considering these allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have made factual allegations that Ms. Williams treated Joseph differently than similarly situated non-disabled children.

Plaintiffs allege the following specific acts on the part of Ms. Harmon, Joseph Galloway's teacher in the 2006-2007 school year:

-13-

a)  In sixth grade, his teacher Mrs. Jeannie Harmon asked [Joseph], in front of the entire class, if he really had seizures and questioned what the seizures looked like because "I have never seen you have a seizure." Joseph was so embarrassed he came home crying that day;

b)  In sixth grade, during a parent-teacher conference, Mrs. Harmon told Mr. and Mr. Galloway that it was "nuisance to teach Joseph," that he was "lazy," not disabled, and that his parents were "enabling" him to feel like a victim;

c)  Throughout his sixth grade year, Mrs. Harmon continued to quiz Joseph in front the entire class about the validity of his seizure disorder;

d)  During a seizure, Joseph often became incontinent, and other children in his class mimicked him by throwing water on their pants and shaking themselves violently, and calling Joseph "seizure boy," all with the knowledge and approval of Mrs. Harmon.

(Doc. 19 at ¶ 19).

Accordingly, with respect to Defendant Harmon, the Court finds that Plaintiffs have alleged facts indicating disparate treatment by Ms. Harmon based on disability.

Plaintiffs make the follows allegations as against Ms. Arthur:

a)  During his junior year in high school, Joseph's Project Lead-the-Way teacher was defendant Arthur; during that year, Joseph was the victim of almost daily name-calling, teasing and abuse because of his disability. Some of the class work was done in groups; Ms. Arthur would assign Joseph to a group of students who regularly bullied him and those students would freeze him out of assignments or intentionally hide the supplies he needed to complete his part of the project. When he complained to Ms. Arthur about it, she would ignore him, goad him into losing his temper, and discipline him in a disproportionate way compared with students without disabilities.  (Doc. 19 at ¶ 23).

-14-

b). The bullying and harassment of Joseph in his Project Lead-the-Way class became so severe and pervasive that Joseph's parents asked officials from both Chesapeake and Lawrence County JVS to move Joseph away from Ms. Arthur. (*Id.* at ¶ 24).

Therefore, the Court finds that Plaintiffs have alleged sufficient facts showing disparate treatment by Ms. Arthur due to Joseph's disability.

### d. Defendants in their official capacities

Plaintiffs also allege official capacity claims against Defendants Dodgion, Arthur, Howard, Hall, Rase, Harmon, and Williams. Since an official capacity claim against an individual equates to a claim against the entity or office employing the official, a suit against a governmental official in his or her official capacity therefore should be treated as a suit against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Defendants who have been sued in their official capacity possess the same immunities as those of the government entity. *Id.* at 167. Accordingly, the official capacity claims are redundant and duplicative and are therefore dismissed. *Claybrook v. Birchwell*, 199 F.3d 350, 356 n. 4 (6th Cir. 2000).

In sum, the claims against the individual Defendants in their individual capacities survive, but the claims against the individual Defendants in their official capacities are dismissed and the claims against the school boards are dismissed.

**C.    Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (Count III)[10]**

Next, Plaintiffs allege a claim for disability discrimination against Defendants Chesapeake and Lawrence County School Boards.  To establish a *prima facie* case of discrimination under § 504 or the ADA, a plaintiff must prove "that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program by reason of his or her disability."  *S.S.*, 532 F.3d at 453.  Further, the plaintiff must show that the discrimination was intentionally directed toward him or her solely because of his or her disability in the context of that public service, activity, or program.  *Tucker v. Tennessee*, 539 F.3d 526, 535 (6th Cir. 2008).

Defendants allege that: (1) there is no causal connection between the teasing and the disability, so there is no cause of action under Section 504 and the ADA; (2) Plaintiffs group "Chesapeake and/or Lawrence County" without relating any facts to either one of them or a particular date or event; and (3) Plaintiffs allege insufficient facts to show that Defendants were made aware of any of the incidents occurring in the  classroom.

The Court disagrees.  First, a number of the incidents listed in the Amended Complaint are disability-based.  For example:

---

[10]  Because the protections under the ADA parallel the protections available under § 504, the Court will analyze Plaintiffs' ADA and § 504 claims together.  *S.S.*, 532 F.3d at 452.

a)    In the sixth grade, his teacher, Mrs. Jeannie Harmon asked him, in front of the entire class, if he really had seizures and questioned what the seizures looked like because "I have never seen you have a seizure."  Joseph was so embarrassed he came home crying that day.  (Doc. 19 at ¶ 19).

b)    Throughout his sixth grade year, Mrs. Harmon continued to quiz Joseph in front of the entire class about the validity of his seizure disorder.  (*Id.*)

c)    During a seizure, Joseph often become incontinent, and toward the end of his sixth grade year he had a seizure in Mrs. Harmon's class; other children in his class mimicked him by throwing water on their pants and shaking themselves violently, and calling Joseph "seizure boy," all with the knowledge and approval of Mrs. Harmon.  (*Id.*)

d)    During tenth grade, a  Chesapeake High School English teacher asked Joseph, in front of the entire class, if he had taken his medicine that day because he was "acting crazy."  (*Id.* at ¶ 23).

e)    During his junior year in high school, Joseph's Project Lead-the-Way teacher was defendant Arthur; during that year, Joseph was the victim of almost daily name-calling, teasing and abuse because of his disability.  Some of the class work was done in groups; Ms. Arthur would assign Joseph to a group of students who regularly bullied him and those students would freeze him out of assignments or intentionally hide the supplies he needed to complete his part of the project.  When he complained to Ms. Arthur about it, she would ignore him, goad him into losing his temper, and discipline him in a disproportionate way compared with students without disabilities.  (*Id.*)

Second, while the allegations are not always specific as to which school system the facts pertain to or the exact date of the incident, Plaintiffs do allege specific incidents which occurred in the classrooms of particular teachers (which can easily be attributed to a school system and school year).  Finally, Plaintiffs allege sufficient facts to show that Defendants were aware of the incidents.  Specifically, Mr. and Mrs. Galloway met

repeatedly with officials from both Chesapeake and Lawrence County to complaint about the treatment of their son.  (Doc. 19 at ¶¶ 26, 31).[11]

Accepting Plaintiffs' allegations as true, they allege sufficient facts to maintain that Joseph Galloway was discriminated against due to his disability.  Accordingly, Defendants' motions to dismiss Count III are denied.

### D.    Title IX (Count IV)

Next, Plaintiffs allege that Chesapeake and Lawrence County School Boards violated Title IX, 20 U.S.C. § 1681, which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

Defendants claim that Plaintiffs fail to make a *prima facie* case of student-on-student sexual harassment.  To make such a claim, Plaintiffs must allege and prove three elements:

---

[11]  In fact, even Joseph Galloway tried to remedy the abuse:

> During a Project Lead-the-Way class in Joseph's tenth grade year, two other students told Joseph they wanted him to "hang himself, let us watch, we will tighten the noose, dig your grave, cut the rope after you're dead and cover you up with dirt."  Joseph asked the teacher, Mrs. Williams, if he could be taken out of the group; in which he was placed and the teacher refused, so Joseph went to the Chesapeake High School assistant principal, who told him he needed to learn to "work it out."  (Doc. 19  at ¶ 23).

1. The sexual harassment was so severe, pervasive and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school;[12]

2. [Defendants] had actual knowledge of the sexual harassment;[13] and

3. [Defendants] were deliberately indifferent to the harassment.[14]

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 258-259 (6th Cir. 2000).  With respect to the first element, the conduct must amount to more than "simple acts of teasing and name-calling among school children."  *Davis v. Monroe Cnty. Bd. of. Edu.*, 526 U.S. 629, 651-52 (1999).  This requires more than "insults, banter, teasing, shoving, pushing, and gender specific conduct that is upsetting to the students subjected to it."  *Id.*

The Court finds that the Amended Complaint clearly alleges more than simple acts of teasing among school children.   For example:

---

[12]  *See, e.g., Davis v. Monroe Cnty. Bd. of Edu.*, 526 U.S. 629 (1999) (harassment included verbal abuse and numerous acts of offensive touching, and persisted for a period of more than five months, resulting in lower grades and a threat of suicide); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) (plaintiff suffered verbal and physical sexual harassment for nearly three years, was diagnosed with depression, and eventually withdrew from school); *Patterson v. Hudson Area Sch.*, 551 F.3d 438 (6th Cir. 2009) (student who suffered verbal and physical sexual harassment for four years, including a sexual assault, became withdrawn and eventually dropped out of regular classes).

[13]  While the Sixth Circuit has not addressed what constitutes notice in a Title IX case, several district courts in the circuit have held that the appropriate persons do not need to be aware of the exact details of a plaintiff's experience to have notice, as long as they "reasonably could have responded with remedial measures to address the kind of harassment" that was reported. *Johnson v. Galen Health Inst.*, 267 F. Supp.2d 679, 687 (W.D. Ky. 2003).

[14]  Deliberate indifference exists "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Davis*, 526 U.S. at 648.

a)    Joseph joined the Chesapeake Junior High School wrestling team and after one wrestling match, on the bus on the way home, several students pulled out their penises, telling him to "touch my dick, you know you want to."  (Doc. 19 at ¶ 23).

b)    During wrestling practice at Chesapeake High School, on several occasions in the locker room and in the school hallways, other students would come up behind Joseph and pull his pants down.  (*Id.*)

c)    After gym class, on several occasions during Joseph's tenth grade year, when Joseph was seated on a bench in the locker room, another student would come up behind him and grind his penis into Joseph's back.  (*Id.* at ¶ 23).

Defendants also argue that Plaintiffs fail to show that the harasser intended to discriminate against Joseph "on the basis of sex," meaning the harassment was motivated by either Joseph's gender or failure to confirm with gender stereotypes.  *Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 648 F.3d 860, 866-867 (8th Cir. 2011).[15]  Whether or not Plaintiffs are required to plead the underlying motivation of the sexual harassment is unclear; however, even if required, Plaintiffs meet this requirement alleging that "[t]he actions of defendants Chesapeake and Lawrence County, in permitting and failing to curtail or prevent sexual assaults against plaintiff Joseph Galloway based on a perception about his sexual orientation and allowing plaintiff to be harassed by other students based on his gender and by allowing a hostile school environment based on gender and perceived sexual orientation constitutes a violation of Title IX."  (Doc. 19 at ¶ 60).

---

[15]  The *Wolfe* Court also notes that "[w]hether a Plaintiff must prove sex-based motivation as part of a Title IX deliberate inference claim has not yet been squarely addressed by this court or any other federal appellate court."  *Id.*

This Court cannot say beyond doubt that Plaintiffs can prove no set of facts in support of a Title IX claim which would entitle Joseph Galloway to relief. Accordingly, Defendants' motions to dismiss Count IV are denied.

### E. Monell Claim (Count V)

Next, Plaintiffs allege that Defendants Chesapeake and Lawrence County School Boards have policies and practices that violate their obligations pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), to maintain lawful policies, practices, and procedures.

To establish an unconstitutional municipal policy or custom based upon a failure to train or supervise, a plaintiff must satisfy the following three elements: (1) that the training or supervision was inadequate for the tasks performed; (2) that the inadequacy was the result of the municipality's deliberate indifference; and (3) that the inadequacy was closely related to or actually caused the injury. *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992). In particular, a plaintiff must show "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.), *cert. denied*, 546 U.S. 1075 (2005).

Here, Plaintiffs allege that "the school district defendants had a policy of ignoring bullying, encouraging bullying and even allowing staff-members to participate in

bullying." (Doc. 31 at 18).  However, Plaintiffs do not allege that Defendants had a well–settled practice or custom that reflected a deliberate indifference to the mistreatment of its students.  For example, Plaintiffs have not pled facts sufficient to show that the training of Defendant employees was inadequate or that the need for more or different training was obvious.  Plaintiffs fail to aver that Defendants' mistreatment of Joseph was part of a pattern and practice of physical harm toward special-needs students and nothing in the pleadings suggests that Defendants knew of prior unconstitutional actions by its employees and failed to respond.[16]  Additionally, Plaintiffs have not sufficiently alleged that an inadequacy in Defendants' training caused the depravation of Joseph's constitutional rights.  In particular, Plaintiffs have not pled factual content so as to allow the Court to draw the reasonable inference that there is an inadequacy in Defendant's training that is likely to cause its employees to encourage or not prevent bullying.

Therefore, taking all factual allegations as true and making all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs have not stated a plausible claim that Defendants' alleged failure to train its employees evidenced an unconstitutional policy or custom.  Accordingly, Defendants' motions to dismiss Count V are granted.

---

[16]  For example, Plaintiffs do not allege that Defendants were involved in prior unconstitutional conduct or have mistreated other special education students.  Additionally, Plaintiffs do not allege that Defendants had any knowledge of acts of abuse against other special-needs students or of employees with a history of encouraging bullying.

### F. Negligence (Count VI)

Next, Plaintiffs allege that the individual Defendants are liable for negligence and gross negligence under Ohio law.[17]

Defendants do not address the specific elements of the claim, rather they maintain that as employees of a political subdivision they are immune from liability under Ohio Rev. Code § 2744.03(A)(6). Conversely, Plaintiffs contend that Defendants are not entitled to immunity because "[they acted] in bad faith or in a wanton or reckless manner."

Under Ohio Rev. Code § 2744.03(A)(6):

> [A political subdivision] employee is immune from liability unless one of the following [three exceptions] applies: (a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose,[18] in bad faith,[19] or in a wanton[20] or reckless manner;[21]

---

[17] Plaintiffs concede that Defendants Chesapeake and Lawrence County School Boards are immune from liability for negligence. (Doc. 31 at 19).

[18] An employee acts with a "malicious purpose," when he or she has "(1) that state of mind under which . . . [his or her] conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987).

[19] "Bad faith" has been defined as "embrac[ing] more than bad judgment or negligence. [Bad faith] . . . imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Slater v. Motorists Mut. Ins. Co.*, 187 N.E.2d 45, 46 (Ohio 1962).

[20] "Wanton" conduct is "the failure to exercise any care whatsoever." *Hawkins v. Ivy*, 363 N.E.2d 367, 369 (Ohio 1977).

[21] An employee acts in a "reckless" manner:
> if he [or she] does an act or intentionally fails to do an act which it is his [or her] duty to the other to do, knowing or having reason to know of facts which would lead a reasonable [person] . . . to realize, not only that his [or her] conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his [or her] conduct negligent. *Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990).

[or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.

Whether behavior constitutes reckless or wanton conduct, so as to fall within the exception to statutory immunity, is ordinarily a factual question for a jury to decide. *Fabrey v. McDonald Police Dep't.*, 639 N.E.2d 31, 35 (Ohio 1994).  Therefore, in order to grant a motion to dismiss under Ohio Rev. Code § 2744.03(A)(6), the pleadings must be "devoid of evidence tending to show that the political subdivision employee acted wantonly or recklessly."  *Irving v. Austin*, 741 N.E.2d 931, 934 (Ohio Ct. App. 2000).  At this early stage of the proceedings, Plaintiffs do not need to show with great specificity how each Defendant contributed to the alleged violations; rather, Plaintiffs must only state allegations generally so as to provide notice as to the nature of the injury.  *Alexander v. Lawrence Cnty. Bd. of Dev. Disabilities*, 1:10cv697, 2012 U.S. Dist. LEXIS 32197, at *26 (S.D. Ohio Mar. 12, 2012).

Plaintiffs do not expressly assert that the individual defendants acted with "malicious purpose, in bad faith, or in a wanton or reckless manner."  (Doc. 31 at 19).[22] The Amended Complaint simply alleges "negligence and/or gross negligence."  (Doc. 19 at ¶ 66).  While Plaintiffs failed to include the requisite buzz words in the Amended Complaint, Plaintiffs have provided sufficient facts from which a jury could conclude that Defendants' conduct was "in bad faith, wanton and/or reckless" and fell within the

---

[22]  This statement is quoted as though it appears in the Amended Complaint.  However, the language quoted was taken from the original Complaint and was removed from the Amended Complaint and is no longer alleged against any defendant.  (*See* Doc. 1 at ¶ 58).

exception to immunity.  Plaintiffs put all Defendants on notice that Joseph Galloway was repeatedly bullied and harassed, including being sexually assaulted in both the Chesapeake schools and in the Collins Career Center.  He was verbally teased, physically and sexually assaulted, his property was stolen, damaged and destroyed, he was publically embarrassed by students and teachers, and his parents complained to numerous school officials about the conduct, yet the Defendants failed to take any action to alleviate the situation.

Therefore, Plaintiffs have alleged sufficient facts from which a jury could conclude that Defendants' conduct falls within the exception to immunity under Ohio Revised Code §2744.03(A)(6)(b).  Accordingly, Defendants' motion to dismiss (Count VI) is denied.

### G.    Beth and James Galloway[23]

Plaintiffs Beth and James Galloway appear to make claims under Counts I and II of the Amended Complaint which both rely on Section 1983.  Count I alleges that a depravation of substantive due process rights caused Mr. and Mrs. Galloway to have suffered the loss of companionship[24] with their son, and Count II alleges that an Equal

---

[23]  Joseph Galloway is an adult and is not alleged to require a guardian to pursue his claims. (Doc. 19 at ¶ 3).  Joseph turned 18 years old on September 25, 2011.  (*Id.* at ¶ 14).

[24]  Loss of companionship claims cannot be made under Section 1983 because the loss of companionship is not due to the deprivation of any rights, privileges, or immunities secured by law as to the person claiming the loss of companionship.  *Stallworth v. Cleveland*, 893 F.2d 830 (6th Cir. 1990).  Plaintiffs incorrectly state that *Stallworth* involved a derivation claim by parents involving their adult child when, in fact, it involved a loss of consortium claim brought by the husband of a victim in an alleged accident involving police brutality.  Its broad prohibition of derivative claims under Section 1983 is not limited to the relationship of the individuals at issue or their ages.

Protection violation has caused the same harm.  These claims cannot be sustained where there are no allegations that the parents have lost the case, custody or control of their child, or the right to raise the child.  *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590-91 (6th Cir. 2008).

Therefore, the claims alleged on behalf of Mr. and Mrs. Galloway are dismissed.

## IV.   CONCLUSION

Accordingly, based on the foregoing, (1) Chesapeake Defendants' motion to dismiss (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**; (2) Lawrence County Defendants' motion to dismiss (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**; and (3) Defendant Williams's motion to dismiss (Doc. 30) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically:

1.  Plaintiffs' substantive due process claim (Count I) is **DISMISSED**;

2.  Plaintiffs' equal protection claim (Count II) will proceed against the individual Defendants in their individual capacities, but is **DISMISSED** as against the individuals in their official capacities and the school boards;

3.  Plaintiffs' Section 504 of the Rehabilitation Act and the ADA (Count III) will proceed against the school boards;

4.  Plaintiffs' Title IX claim (Count IV) will proceed against the school boards;

5.  Plaintiffs' Monell claim (Count V) is **DISMISSED**;

6.  Plaintiffs' negligence claim (Count VI) will proceed against the individual Defendants, but is **DISMISSED** as to the school boards; and

7.  Plaintiffs James and Beth Galloway are **TERMINATED** as parties to this action.

**IT IS SO ORDERED.**

Date:  October 23, 2012            *s/ Timothy S. Black*
                                                 Timothy S. Black
                                                 United States District Judge