UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH GALLOWAY

Plaintiff,

vs.

CHESAPEAKE UNION EXEMPTED VILLAGE SCHOOLS BOARD OF EDUCATION, *et al*.,

Defendants.

Case No. 1:11-cv-850

Judge Timothy S. Black

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION *IN LIMINE* (Doc. 85)**

This civil action is before the court on Defendants' omnibus motion *in limine* to exclude evidence (Doc. 85) and the parties' responsive memoranda (Docs. 88, 89).

## I. ANALYSIS

Because a ruling on a motion *in limine* is "subject to change as the case unfolds," this Court's ruling on Defendants' motion *in limine* constitutes a preliminary determination in preparation for trial. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984); *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Courts have the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

**A. Beth Galloway Testimony and Records**

Beth Galloway ("Galloway")[1] intends to offer testimony on incidents about which Plaintiff told her, and about which she then either wrote to or had conversations with school officials. Defendants argue that Galloway's expected testimony and e-mail messages will contain and/or constitute inadmissible hearsay and that Galloway should be prohibited offering testimony on incidents about which she has no personal knowledge. Defendants note that in her deposition, Galloway gave testimony about incidents that occurred at Plaintiff's school even though Galloway was not present when these alleged incidents occurred and did not witness any of these alleged incidents first-hand.

Plaintiff claims that Galloway's testimony is admissible pursuant to the established hearsay exceptions for present sense impressions, excited utterances, and then-existing mental, emotional, or physical conditions. Fed. R. Evid. 803(1)-(3). Plaintiff also claims that Galloway could authenticate and testify about the e-mails she sent to school officials pursuant to the hearsay exception for records of regularly conducted activity. Fed. R. Evid. 803(6).

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. *But see* Advisory Committee Notes to 1972 Proposed Rules ("This rule does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement. Rules 801 and 805 would be

[1] Plaintiff Joseph Galloway will be referred to as "Plaintiff" throughout this Order.

applicable. This rule would, however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it.")

Hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Hearsay is inadmissible unless an exception found in a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court applies. *See* Fed. R. Evid. 802.

As an initial matter, Galloway must have personal knowledge of the matters about which she will testify. Fed. R. Evid. 602. She may not testify about what did or did not happen during incidents for which she was not present, but she *may* relay statements that others made to her about those events, so long as those statements are either: (1) not hearsay or (2) admissible pursuant to one of the exceptions to the rule against hearsay.

Plaintiff has not convinced the Court that the hearsay exceptions he identifies will apply to the statements at issue. The exception for present sense impressions applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "This exception permits the introduction into evidence of a statement that is describing or explaining an event made while the declarant was presently perceiving the event or immediately thereafter, thus, providing a necessary requirement of contemporaneousness." *Miller v. Stovall*, 742 F.3d. 642, 650 (6th Cir. 2014). Plaintiff has not shown that the statements he made to Galloway were made as he was presently perceiving an event (or *immediately* thereafter)

or that the statements that Galloway made to school officials were made as she was presently perceiving an event (or *immediately* thereafter).[2]

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2).

> A hearsay statement is admissible under the excited utterance exception if (1) there [is] an event startling enough to cause nervous excitement; (2) the statement [is] made before there is an opportunity to contrive or misrepresent; and (3) the statement [is] made while the person [is] under the stress of the excitement caused by the event. Courts consider these elements on a case-by-case basis. All three inquiries bear on the ultimate question: Whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event.

*Maggard v. Ford Motor Co.*, 320 F. App'x 367, 372 (6th Cir. 2009) (internal citations and quotation marks omitted). Plaintiff has not shown that the statements he made to Galloway were his spontaneous reaction to a startling event or that the statements Galloway made to school officials were her spontaneous reaction to a startling event.

The Federal Rules of Evidence also carve out a hearsay exception for: "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), <u>but not including a statement of memory or belief to prove the fact remembered or believed</u> unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3) (emphasis added). For a hearsay statement to be admissible pursuant to Rule

[2] The Court notes that to the extent that Galloway's statements to school officials incorporate statements by Plaintiff, and both statements are hearsay, each part of the combined statement must conform to a hearsay exception to be admissible. *See* Fed. R. Evid. 805. The Court also notes that these exceptions relate to the *declarant's* perceptions (who may or may not be the witness who testifies as to the statements).

803(3), "the declarant must not have had an opportunity to reflect and possibly fabricate or misrepresent his thoughts." *United States v. LeMaster*, 54 F.3d 1224, 1231 (6th Cir. 1995). Plaintiff has not shown that the statements he made to Galloway were reflective of his then-existing state (and not merely statements of memory or belief) or that the statements Galloway made to school administrators were reflective of her then-existing state (and not merely statements of memory or belief).

While Plaintiff has not proven that the above-cited hearsay exceptions apply to the statements he seeks to admit, Defendants have not proven that such statements are clearly inadmissible (*i.e.*, that no exception *could* apply). Because the admissibility of Galloway's testimony depends on the context in which it is presented and the nature of the statements made, the Court declines to exclude her testimony and/or e-mail messages at this time. However, for the reasons stated here, if (1) the statements described are offered for their truth (and not for some other purpose) and( 2) Plaintiff cannot convince the Court that an exception applies, then these statements will not be admissible.[3]

[3] Plaintiff also argues that Galloway could authenticate and testify about the e-mails she sent to school officials pursuant to Rule 803(6). Records of regularly conducted activity are properly admitted under the Rule803(6) exception to the hearsay rule if they satisfy four requirements: (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *Cobbins v. Tenn. Dep't. of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009). Defendants argue that the e-mails are not kept in the course of regularly conducted school district activities or in the regular course of school district business. The Court does not anticipate that Galloway will be able to provide the required foundational evidence. *See* 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.08 ("The fact that proffered records fulfill these requirements is ordinarily shown by the testimony of a custodian of the records "or another qualified witness" who can explain the record-keeping of the organization.")

**B. Brandon Call Testimony**

Plaintiff testified that another student rubbed his genitals on Plaintiff's back for a period of four weeks in the gym locker room during his ninth grade year. (Doc. 58 at 30, 62). Plaintiff testified that it happened five or six times during this four week period. (*Id.* at 62). Brandon Call claims that there were as many as a dozen such incidents and that they took place in the Plaintiff's tenth grade year. (Doc. 74-1 at 7-8; Doc 74 at 74). [4]

Defendants argue that Plaintiff is attempting to use the testimony of Brandon Call to enlarge the number and timing of alleged sexual harassment incidents. Defendants claim that Plaintiff's testimony and Call's testimony are completely contradictory with respect to the number of times the alleged incidents occurred and the dates on which they occurred, and, as such, Call's testimony should be excluded because it poses a significant risk that the jury will be misled. Plaintiff argues that Call's testimony corroborates Plaintiff's testimony that the alleged incidents occurred and that there is no reason to exclude Call's testimony based on the discrepancies.

Defendants cite *Powell-Pickett v. A.K Steel Corp.*, 549 Fed. App'x 347, 352 (6th Cir. 2013), for the proposition that Call cannot be permitted to contradict Plaintiff's testimony. In *Powell-Pickett*, the Sixth Circuit found that the district court did not abuse its discretion in striking the plaintiff's affidavit offered in opposition to a motion for summary judgment. During her deposition, the plaintiff refused to testify in large measure, answering a number of critical questions with "I don't recall"; later, the plaintiff

[4] Defendants also note that Call testified that he physically assaulted Plaintiff and lied to a teacher about it, but Defendants do not put forth an argument for exclusion of this specific testimony.

submitted an affidavit affirming the complaint's main allegations. The court stated the following rule:

> When a party says one thing live at a deposition but another thing in a written statement, the change is conspicuous. The written words—often composed by the party's lawyer—look too contrived to deserve any weight. The rule therefore is that a party opposing summary judgment with an affidavit that contradicts her earlier deposition must explain why she disagrees with herself.

*Id.* (citing *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012)). The court noted that while a district court may not strike an affidavit if the alleged inconsistency it created existed within the deposition itself, the plaintiff's "lack of memory about the alleged wrongs she suffered was too complete to appear unintended."

Here, Plaintiff does not contradict his own testimony; nor has he refused to answer questions, in an effort to rely solely on Call's testimony. Instead, Plaintiff and Call will both testify that another student rubbed his genitals on Plaintiff. The events at issue occurred several years ago, and the fact that Plaintiff and Call have different memories of how many times these incidents occurred, and during which school year they occurred, does not necessitate exclusion. Defendants can question the witnesses about these matters during cross-examination and call the jury's attention to any discrepancy during closing argument.

The court may exclude relevant evidence only if its probative value is *substantially outweighed* by a danger of misleading the jury. Fed. R. Evid. 403 (emphasis added). The Court finds that Defendants have not made this showing and declines to exclude Call's testimony on this basis.

**C. Rachel Frye Testimony**

Defendants seek to exclude Rachel Frye's anticipated testimony regarding verbal teasing of Plaintiff in English class, statements made about Plaintiff when he was not present, and the bullying Frye experienced at the high school.

**1. Hearsay**

Defendants argue testimony regarding names Plaintiff was called in the cafeteria will contain hearsay. Plaintiff argues that this testimony is relevant because it helps to establish that it was generally known that Plaintiff has a disability and that it was generally known (and accepted) that Plaintiff was the target of bullying. Plaintiff summarily claims that, to the extent such testimony contains hearsay, it is admissible pursuant to Rules 803(1) and (3).[5]

While Plaintiff has not proven that the above-cited hearsay exceptions apply to the statements he seeks to admit, Defendants have not proven that such statements are clearly inadmissible (i.e. that no exception *could* apply). Because the admissibility of Frye's testimony depends on the context in which it is presented and the nature of the statements made, the Court declines to exclude her testimony on a hearsay basis at this time. However, for the reasons stated herein, if (1) the statements described are offered for their truth (and not for some other purpose) and (2) Plaintiff cannot convince the Court that an exception applies, then these statements will not be admissible.

[5] The applicability of these exceptions is discussed in Part I.A, *supra*.

**2. Rule 403**

Defendants claim that Frye's testimony will cause unfair prejudice, confuse the issues, and mislead the jury. Defendants argue that Frye should not be permitted to testify about the teasing of Plaintiff in English class or the statements made about Plaintiff when Plaintiff was not present because there is no evidence that school officials were aware of or informed of the teasing. Plaintiff argues that this testimony is relevant to issues before the jury, regardless of whether Frye knows whether school officials were aware of such teasing. These concerns are addressed in Part I.F, *supra.*

Defendants also argue that Frye should not be permitted to testify about the alleged bullying against her because there is no connection between students' harassment of Frye and other students' alleged harassment of Plaintiff; further, such evidence is irrelevant to Plaintiff's claims and unduly prejudicial. Plaintiff also argues that the bullying against Frye is relevant to show that school officials ignored bullying as a matter of policy and practice.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The testimony of Rachel Frye regarding the bullying directed at her does raises substantial concerns of unfair prejudice, confusion of the issues, and misleading the jury. The probative value of this evidence would warrant admissibility if Plaintiff could show that school officials knew about the bullying she

suffered. If she cannot make such a showing, the bullying of Frye is not relevant to Plaintiff's claims because it does not help to show deliberate indifference.

**D. Debbie Riggs's Statements**

Plaintiff seeks to introduce a statement made by Debbie Riggs, former President of the Chesapeake Teacher's Union, that she would not report a teacher who harassed a disabled student. (*See* Doc. 74 at 29-30).[6] Defendants object on grounds that the statement is hearsay and that it creates a danger of unfair prejudice, confusion of the issues, and misleading of the jury.

**1. Hearsay**

To the extent this statement is hearsay, Plaintiff will need to identify an exception that allows for its admission. Plaintiff claims that the statement is admissible pursuant to Rules 803(1), (2), and (3). While Plaintiff has not proven that the above-cited hearsay exceptions apply to the statements he seeks to admit, Defendants have not proven that such statements are clearly inadmissible (*i.e.*, that no exception *could* apply). Because the admissibility of Riggs's statement depends on the context in which it is presented, the Court declines to exclude her testimony on a hearsay basis at this time. However, for the reasons stated herein, if (1) the statements described are offered for their truth (and not for some other purpose) and (2) Plaintiff cannot convince the Court that an exception applies, then these statements will not be admissible.

[6] This statement was testified to by Defendant Scott Howard, former superintendent of Chesapeake Schools.

**2. Rule 403**

Defendants argue that Riggs's statements are inflammatory and create a probability of prejudice to Defendants, confusion of the issues, and misleading of the jury because Riggs did not hold an administrative position at Chesapeake and, therefore, could not bind the School Board or any of the individual Defendants with her statements. Defendants further argue that there is no allegation that the teachers harassed Plaintiff based on his disability.

Plaintiff claims that this evidence is highly relevant because Plaintiff is bringing claims that the School District, and numerous individual officials and teachers, discriminated against Plaintiff based on his disability. Plaintiff alleges that Defendants did not follow district policies regarding the reporting and investigation of bullying, and notes that Riggs's statements were made during a meeting in which one of Plaintiff's teachers was accused of not reporting bullying.

Riggs's statement is relevant to Plaintiff's contentions that the School District discriminated against Plaintiff based on his disability and that the School District did not follow its own policies regarding bullying and harassment. The Court finds that the dangers of unfair prejudice, confusion of the issues, and misleading of the jury do not substantially outweigh the probative value of Riggs's statements. For this reason, the Court declines to exclude this evidence pursuant to Rule 403.

**E. Use of the Term "Bullying"**

Defendants argue that use of the term "bullying" that should be permitted only when it is consistent with the definition found in the Chesapeake School Board policies.[7] Defendants contend that activity that does not meet the School Board's definition should be referred to as "harassment." Specifically, Defendants argue that if Plaintiff uses the term "bullying" indiscriminately, he will confuse the issues and mislead the jury as to the relevant legal definitions and the Chesapeake School Board policies. Plaintiff argues that most people have a common-sense understanding of what bullying is, and so, to require all witnesses to use the term "harassment" would be prejudicial to Plaintiff and would unduly confuse and restrict the jury.

The Court notes that the Chesapeake School Board policies appear to provide a *common definition for bullying and harassment.* The Court notes that "harassment" is the term used in the case law, but to restrict witnesses to use of this term would require them to know what legally cognizable harassment is. The jury will decide whether Defendants are liable for their actions (or inactions) based on the instructions provided to them, and the parties are free to cross-examine any witness regarding how he or she characterizes

[7] Defendants did not direct the Court to the specific language that provides the definition they reference; the Court finds the language that follows most relevant. "D. Harassment, intimidation or bullying means any intentional written, verbal, graphic, physical, or electronically transmitted act (i.e., internet, cell phone, personal digital assistance (PDA), wireless hand-held devices, etc) that a student or group of students exhibits toward another particular student more than once and the behavior both causes mental or physical harm to the other student; and is sufficiently severe, persistent or pervasive that it created an Intimidating, threatening or abusive educational environment for the other student. E. In evaluating whether conduct constitutes harassment, intimidation or bullying, special attention should be paid to the words chosen or the actions taken, whether such conduct occurred in front of others or was communicated to others, how the perpetrator interacted with the victim, and the motivation either admitted or appropriately inferred." (Doc. 85 at 14) (emphasis added).

the harm Plaintiff allegedly suffered. For these reasons, the Court declines to exclude the use of the term "bullying" or require exclusive use of the term "harassment."

**F. Testimony Regarding Non-Sexual or Non-Disability Based Harassment**

The Supreme Court has offered the following guidance on whether gender-oriented conduct rises to the level of actionable harassment under Title IX:

> [This inquiry] thus "depends on a constellation of surrounding circumstances, expectations, and relationships," *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved, see OCR Title IX Guidelines 12041–12042. Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. See, *e.g.*, Brief for National School Boards Association et al. as *Amici Curiae* 11 (describing "dizzying array of immature ... behaviors by students"). Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. <u>Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.</u>

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) (emphasis added). Based on the language quoted above, Defendants seek the exclusion of any instances of non-disability based or non-gender based harassment because evidence of general teasing and/or harassment cannot serve as a basis for liability.

Plaintiff claims that the language in *Davis* is not controlling in this context because it describes the standard for liability, not admissibility of evidence. Plaintiff argues that the jury must determine how many pushes and shoves, instances of name

calling, and instances of sexual assault constitute a violation of the ADA; to eliminate all of this evidence would pre-determine the result. Plaintiff further argues that it may not always be clear what motivates an instance of harassment, so the jury must consider the cumulative weight of all of the incidents.

Irrelevant evidence is inadmissible. Fed. R. Evid 402. However, the threshold for relevancy is low: evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid 401. The jury will be tasked with determining whether any evidence presented compels them to find that Defendants are liable under the standard articulated in *Davis.* The Court declines to predetermine which incidents may give rise to liability, but notes Defendants' concerns. The Court will not allow Plaintiff to present evidence of general teasing without some link to Plaintiff's disability or gender.

**G. Expert Witnesses**

**1. Marc Ellison**

Dr. Marc Ellison was retained by Chesapeake schools to train the faculty and staff about autism and how it affects learning. Defendants seek to exclude Dr. Ellison's testimony about the Chesapeake faculty and their dealings with Plaintiff. Defendants note that Dr. Ellison was not identified as an expert witness, and Plaintiff concedes that Dr. Ellison is a fact witness. (Doc. 88 at 10). The Court will analyze the allowable scope of Dr. Ellison's testimony accordingly.

Defendants argue that any testimony Dr. Ellison would offer on autism or the training of Chesapeake faculty is based on scientific, technical, or other specialized knowledge for which Dr. Ellison must be qualified as an expert. Plaintiff notes that Ellison made relevant observations during his training sessions.[8] Further, Plaintiff argues that Dr. Ellison's opinion that his trainings were not successful because of the attitudes of the Chesapeake teachers is not the type of opinion that is reserved for an expert witness.

Pursuant to Federal Rule of Evidence 701,

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Accordingly, the Court finds that the observations Dr. Ellison made during these training sessions are admissible. However, Dr. Ellison will not be permitted to offer his scientific or technical knowledge about autism nor his opinion on the effectiveness of his trainings.

Defendants also argue that Dr. Ellison's testimony is irrelevant to Plaintiff's peer-on-peer gender-based and disability-based harassment claims, that any claims about inadequate training must be connected to specific teachers, and that the dangers of severe prejudice and misleading the jury are high if Dr. Ellison is permitted to give general testimony about the training provided to the faculty. The Court is unable to find at this time that such dangers substantially outweigh the probative value of Dr. Ellison's

[8] These observations are that a number of teachers did not attend the trainings, many of the teachers were resistant to learning anything about autism, and some teachers were openly hostile toward Dr. Ellison and Plaintiff.

testimony. Relevant considerations include whether the teachers at issue attended the training sessions and whether the School District will present evidence that these trainings sessions were remediation efforts.

**2. Dr. Vanessa Jensen**

Defendants have not yet deposed Dr. Jensen.[9] In their reply brief, Defendants suggest that the motion *in limine* concerning Dr. Jensen's testimony be held in abeyance until her deposition has been taken so that the parties can better argue the *Daubert* factors. The Court is willing to acquiesce to this request. However, because trial begins in less than two weeks, an expedited briefing schedule is necessary. If Defendants wish to pursue a motion *in limine* regarding Dr. Jensen's testimony, they shall file it on or before October 28, 2014. Plaintiff's response is due on or before October 30, 2014. Defendants' reply, if any, is due on or before October 31, 2014.

**H. IEP Dispute and Due Process Proceedings**

Plaintiff's parents ("the Galloways") filed a due process complaint in connection with an IEP dispute they had with Defendant Chesapeake Union Exempted Village School District Board of Education ("Chesapeake Board"). This complaint was resolved and dismissed pursuant to a settlement agreement. (Doc. 85 at 16-19). The settlement agreement provides that Plaintiff and the Galloways have released all special education claims arising under the IDEIA, 20 U.S.C. §1400, *et seq.* and implementing regulations, and the corresponding state law, O.R.C. Chapter 3323 and implementing regulations, against the Chesapeake Board, its administrators, and its employees. (*Id.* at 18). By

[9] Plaintiff notes that this deposition is scheduled for October 24, 2014.

executing the agreement, the parties wished to resolve all matters between them arising in, arising out of, or in any way relating to the claims alleged in the Due Process Complaint. (*Id.* at 16).

Defendants argue that Plaintiff should not be permitted to use any of the disputed IEP issues in this matter because they have been fully resolved and dismissed. As such, Defendants argue, Plaintiff's and the Galloways' complaints about how Chesapeake officials were creating and implementing Plaintiff's IEP are irrelevant to this action and should not be presented to the jury. Defendants contend that such evidence would needlessly confuse the issues and mislead the jury as to what *is* and *is not* actionable misconduct in this case.

Plaintiff argues that he must be allowed to present evidence on how events came to pass.[10] Specifically, Plaintiff claims that if information about the IEP dispute and due process claim is withheld, the jury may be led to believe that Chesapeake unilaterally initiated the retention of Marc Ellison to train the faculty or Plaintiff's enrollment in Marshall University during his senior year and that such a belief could form a basis for Chesapeake to defend itself against the claim of deliberate indifference. Plaintiff argues that he should be permitted to show that the only actions taken by Chesapeake to remediate the bullying and disability discrimination were taken *after* the Galloways' threatened to, and did invoke, the legal process.

[10] Plaintiff argues that he must be permitted to present evidence about the following: "the history of the bullying and the disability-based discrimination; about [the Galloways'] attempts to get relief from the district and its officials; about the threats of filing a due process complaint; about the family's need to hire an attorney in order to get anyone's attention; about the settlement of the special education issues that resulted in [Plaintiff] spending his senior year of high school at a program at Marshall University; [and] about the district's retention of Marc Ellison to train the Chesapeake faculty and staff." (Doc. 88 at 15).

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." [11] The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of misleading the jury or undue delay. Fed. R. Evid. 403.

Something more than the failure to provide a free appropriate public education, as required by the IDEA, must be shown to prove discrimination in the education context. *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). While not determinative, the disputed evidence is relevant insofar as it provides *context for* the current dispute.[12] Therefore, Plaintiff will be permitted to introduce evidence of the chronology of the events that occurred between the Galloways and the Chesapeake Board of Education. In essence, Plaintiff will be permitted to present the reasons for the dispute, the threat of legal action, and the substance of the agreement reached. However, Plaintiff will *not* be permitted to relitigate the merits of his due process claim. The Court finds that this limit will provide a safeguard against confusion of the issues or misleading of the jury.

Defendants' attempt to analogize the admission of evidence related to the IEP dispute and the due process proceedings to the admission of EEOC findings in an

[11] *See also* Advisory Committee Notes to 1972 Proposed Rules. ("The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action. . . . The fact to which the evidence is directed need not be in dispute. . . . Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").

[12] Defendants argue that Plaintiff cited no legal authority that would make this evidence admissible. However, all Plaintiff needs to do is show relevancy. *See* Fed. R. Evid. 402.

employment discrimination law suit is unavailing. The Sixth Circuit has found that an EEOC letter of violation is presumptively inadmissible because it suggests preliminarily that there is reason to believe a violation has taken place and results in unfair prejudice to a defendant. *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997). Here, however, Plaintiff will *not* be presenting any government findings. Instead, he will be allowed to provide context for the current litigation, only.[13]

## II. CONCLUSION

Accordingly, for these reasons, Defendants' omnibus motion *in limine* seeking the exclusion of evidence (Doc. 85) is **GRANTED IN PART** and **DENIED IN PART**, as explained herein.

**IT IS SO ORDERED**.

Date: 10/27/14

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge

[13] Defendants also offer a policy rationale for exclusion: if Plaintiff can argue that the actions taken by Defendants were only taken under the threat of legal action, it will undermine the willingness of school districts to enter into settlement agreements for due process complaints. The Court notes that the settlement agreement did not address the claims brought by Plaintiff in the instant litigation and that Plaintiff has the right to try those claims, regardless of the settlement agreement.